CLARK, Justice.*
hWe granted this writ application to determine whether the court of appeal erred in reversing a trial court judgment which declared the decedent’s wife a one-half owner of the family home and its furnishings. Because we find the agreement at issue was enforceable without judicial approval for purposes of La.Civ.Code art. 2329, and the existence of a community property regime is not a prerequisite to the applicability of La.Civ.Code art. 2343.1, we reverse the judgment of the court of appeal and reinstate the trial court judgment.
FACTS AND PROCEDURAL HISTORY
Dr. William E. Faget (“William”) married Audrey Menard (“Audrey”) on De *416 cember 22, 1977. This union was each party’s second marriage, and both had children from their previous marriages. On December 15, 1977, prior to William and Audrey’s marriage, they entered into a matrimonial agreement establishing a ^contractual matrimonial regime.[1]
In November 1992, William suffered a stroke and was admitted into the intensive care unit at St. Tammany Parish Hospital. On November 30, 1992, while in the hospital, William and Audrey executed a contract, the “Residence Agreement.” The document, made by authentic act, purported to make the family home and its furnishings community property.[2] The Residence Agreement provided, in pertinent part:
It has been the intention and wish of each appearer that though separate in property per [mjarriage [e]ontract dated December 15, 1977, the residence be treated as community, and that in the event of the death of either party, that individual 50% interest in the residence and all furnishings is to be inherited by that individual’s children.
William and Audrey remained married and resided together until his death on May 12, 2003. The Residence Agreement was filed into the public records after his death on September 5, 2003.
In July 2003, William’s three children from his first marriage filed a petition to open the succession and appointed Pier Marie Faget Jenkins (“Pier”) as independent administratrix.[3] Pier, as the independent administratrix, filed a petition for a revendicatory action against Audrey, seeking to have the succession declared full owner of the residence and furnishings. Additionally, the succession sought an order to compel Audrey to account for and deliver the property. On April 22, 2005, the revendicatory action and the succession proceeding were consolidated.
Thereafter, Audrey filed a partial motion for summary judgment asking that the | ^Residence Agreement be declared enforceable and that a judgment recognize her as a one-half owner of the property at issue. The Faget children filed a cross-motion for summary judgment, asserting the Residence Agreement was invalid on three grounds: (1) William lacked capacity to enter into the agreement; (2) there was no court approval to modify the regime; and (3) the language of the agreement was precatory. On April 5, 2006, the cross-motions for summary judgment were argued to the trial court.
First, the trial court found William was lucid at the time the Residence Agreement was signed in light of William’s attorney’s testimony that the attorney spoke to William before the document was executed and was satisfied William did not lack capacity. Moreover, no one could testify William was not lucid at the time the Residence Agreement was signed. The hospital nurse’s notes for the relevant time show William requested his lawyer in order to sign papers. The two witnesses to the Residence Agreement also testified that, though they did not recall signing the document, the signatures were indeed *417 their own and they would not have signed without first seeing William sign.
Next, the trial court found the Residence Agreement did not require judicial approval, reasoning that under La.Civ. Code art. 2329 a single separate asset can be made community just as an entire separate estate can be made community without the requirement of judicial approval.[4]
| ¿Lastly, the trial court found no merit to the argument that the language expressed an intent to do something at a later date. Accordingly, the trial court granted Audrey’s motion for partial summary judgment, denied the Faget children’s motion for summary judgment, and declared Audrey to be a one-half owner of the family residence and its furnishings. Additionally, the judgment recognized that Audrey was entitled to a life-time usufruct over the remaining one-half of the relevant property and declared the Faget children the naked owners thereof, subject to Audrey’s usufruct. The Faget children appealed.
The court of appeal reversed the trial court and remanded.[5] The court of appeal found the Residence Agreement constituted a matrimonial agreement that modified a matrimonial regime (making a contractual regime partly legal and partly contractual) and, thus, required court approval prior to its execution pursuant to La.Civ. Code art. 2329. The court of appeal found, without court approval, the Residence Agreement was unenforceable. Additionally, it reasoned the Residence Agreement could not act as a donation under La. Civ. Code art. 2343.1 because there was no existing legal regime.[6] The court of appeal reached this conclusion by finding the legislature chose to use “the community” as opposed to “a community.” Audrey filed a writ application with this court.
, We granted certiorari to determine whether a single asset modifies a regime so as to trigger the need for court approval under La.Civ.Code art. 2329 and, • | r,alternatively, to determine whether a community regime must exist in order for a separate asset to be transformed into community property pursuant to La.Civ. Code art. 2343.1.[7]
APPLICABLE LAW
Summary judgments are reviewed de novo on appeal, with the reviewing court using the same criteria that govern the trial court’s determination of whether *418 summary judgment is appropriate; whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Louisiana Safety Ass’n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass’n, 2009-0023, p. 5 (La.6/26/09), 17 So.3d 350, 353. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. P. art. 966(B); Costello v. Hardy, 2003-1146, p. 8 (La.1/21/04), 864 So.2d 129, 137.
DISCUSSION
From the outset we note two issues are before us: (1) the validity of the Residence Agreement, which attempts to transfer a separate asset into community property without court approval; and (2) William’s capacity to enter into the Residence Agreement. Audrey’s counsel argues the latter is not before this court insofar as the Faget children did not file a writ application or specifically assign this issue as error in them opposition brief. However, under La.Code Civ.P. art. 2133, the argument is properly before us because the Faget children asserted an argument in support of the court of appeal judgment without seeking to attack or modify the judgment.[8]
IfiThe Faget children argue William was not lucid when the Residence Agreement was executed. They allege he was in the intensive care unit after suffering a stroke, was heavily medicated, spoke incoherently, and exhibited atypical behavior. Additionally, several of the children claim that after the document’s execution, William told them he did not agree with the Residence Agreement but every time he attempted to revoke it, Audrey threatened to leave him. The court of appeal did not rule on the capacity issue; nonetheless, we find for the following reason, the argument lacks merit. The Residence Agreement was executed on November 30, 1992, and William did not challenge its validity in the next ten and one-half years that he lived. The affidavits of the Faget relatives assert William was not satisfied with the effects of the document and, but for the threat of Audrey leaving, William would have rescinded it. Ultimately, though, William chose to leave the agreement intact, and he died in May 2003. La.Civ.Code art. 1477 defines capacity as follows: “To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making.” This court finds the heirs of a party are estopped from challenging a donation when that party lived for ten years with the consequences of the disposition he made, had a decade to challenge the agreement himself, and chose, instead, to allow its continued existence.
Next, we address the validity of the Residence Agreement in the absence of court approval. La.Civ.Code art. 2325 defines a matrimonial regime as “a system of principals and rules governing the ownership and management of the property of married persons as between themselves and toward third persons.” There are three types of matrimonial regimes: (1) *419 legal; (2) contractual; and (3) partly legal and 17partly contractual. La.Civ.Code art. 2326. The legal regime is the community of acquets and gains. La.Civ.Code art. 2327. The contractual regime is contemplated in La.Civ.Code art. 2328, which provides, in pertinent part: “[a] matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime.” Logically, the partly legal and partly contractual regime is one regime that governs both community and separate assets. As cited earlier, La.Civ.Code art. 2329 allows spouses to “enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules.”
The Faget children aver the Residence Agreement was a matrimonial agreement that modified the existing contractual regime, making part of the estate separate and part of the estate community. As such, the original regime was modified from a contractual regime to a partly contractual and partly legal regime, which required court approval.
Audrey, on the other hand, contends the agreement is not a matrimonial agreement that modified a matrimonial regime. She asserts there is a distinction between matrimonial agreements and interspousal contracts. The former concerns the classification and management of future acquisitions while the latter involves existing assets. The Residence Agreement relates only to one existing asset (the house/furnishings) and does not affect the contractual regime of separate property in any other respect. As such, judicial approval was not required.
We agree with Audrey. We find the legal effect of the Residence Agreement pertained only to a single asset and amounted to a single transaction. The agreement does not purport to and will not govern future acquisitions. Thus, the Residence Agreement is not a matrimonial agreement that modified William and Audrey’s ^contractual regime. Importantly, the first sentence of La.Civ.Code art. 2329 permits spouses to enter into matrimonial agreements before or during marriage as to all matters that are not prohibited by public policy. The second sentence of the second paragraph of La.Civ.Code art. 2329 additionally allows spouses to “subject themselves to the legal regime by a matrimonial agreement at any time without court approval.” These two sentences, read together, indicate the legislative favoring of legal regimes. To hold that spouses can subject the entirety of their estate to the legal regime without court approval but they must obtain court approval to subject a specific asset to the legal regime is nonsensical. The larger category subsumes the smaller category; accordingly, we find there existed no legal need to obtain judicial approval. Thus, the Residence Agreement is enforceable pursuant to La.Civ.Code art. 2329.
Alternatively, we find, as also argued by Audrey, that La.Civ.Code art. 2343.1 applies. La.Civ.Code art. 2343.1 provides, “the transfer by a spouse to the other spouse of a thing forming part of his separate property, with the stipulation that it shall be part of the community, transforms the thing into community property.” When determining the meaning and application of a statute, we must observe the rules of statutory interpretation.
“[T]he paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law.” M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371, p. 13 *420 (La.7/1/08), 998 So.2d 16, 27, citing State v. Johnson, 2003-2993, p. 12 (La.10/19/04), 884 So.2d 568, 575. It is well established that “[t]he starting point for the interpretation of any statute is the language of the statute itself.” Dejoie v. Medley, 2008-2223 (La.5/5/09), 9 So.3d 826, 829. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further | ¡Interpretation made in search of the legislature’s intent. Id.; La. Civ.Code art. 9; La. R.S. 1:4. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law. La. Civ.Code art. 10. When analyzing legislative history, it is presumed the legislature’s actions in crafting a law were knowing and intentional. M.J. Farms, Ltd., 2007-2371 at pp. 13-14, 998 So.2d at 27. More particularly, this court must assume the legislature was aware of existing laws on the same subject, as well as established principles of statutory construction and the effect of their legislative acts. Id.
The court of appeal inserted into La.Civ. Code art. 2343.1 a requirement that the community regime must pre-exist the agreement to transfer separate property to the community. We find a plain reading of the statute does not contain such a requirement. The Residence Agreement, executed by authentic act, fully satisfies the elements of La.Civ.Code art. 2343.1 and makes the property at issue community inasmuch as William transferred to Audrey the residence/furnishings, which formed part of his separate property, with the stipulation that it be considered community property. This application does not lead to absurd results; rather, a wife who was still married to her husband at the time of their death is allowed to continue her life in their family home and enjoy a one-half interest in it. The fact that all their other assets were separate in nature does not render the article inapplicable.
While we find the statute to be clear and unambiguous and acknowledge the inquiry-ceases there, consideration of the legislative history further supports our holding. La.Civ.Code art. 2343.1 was enacted by 1981 La.Acts, No. 921, § 2, which also added the second paragraph to La.Civ. Code art. 2336. This added paragraph of La.Civ.Code art. 2336 provides:
During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or in part. In such a case, the things that each spouse | inacquires are separate property. The partition is effective toward third persons when filed for registry in the manner provided by Article 2332.
The legislature’s act of allowing spouses to contractually transform their community property into separate property via La. Civ.Code art. 2336, and their separate property into community property via La. Civ.Code art. 2343.1, evidences an intent to allow spouses to voluntarily classify individual assets as they so desire. La.Civ. Code art. 2336 specifically contemplates a situation where all property is community in nature (such that a contractual regime was not in existence) and allows spouses to partition that community property, transforming it to separate property. This statutory provision does not require the contractual regime to pre-exist an agreement to transfer. Similarly, La.Civ.Code art. 2343.1, enacted by the same legislative act, does not require the legal regime to preexist an agreement to transfer.
Also, notably, the partition described in La.Civ.Code art. 2336 permits spouses to transform community property into separate property, either “in whole or in part” *421 and does not require judicial approval for doing so. This article further supports our holding stated above regarding La.Civ. Code art. 2829 that an agreement as to specific assets does not change the matrimonial regime, necessitating court approval. The legal regime is the default regime and is favored by the legislature. Thus, it is illogical to interpret La.Civ.Code art. 2329 as requiring judicial approval for a non-favored regime to incorporate assets subject to the rules of the favored regime, when La.Civ.Code art. 2336 allows a favored regime to incorporate assets subject to the rules of the non-favored regime, without the requirement of court approval.
Accordingly, we conclude the Residence Agreement is enforceable inasmuch as we find it did not operate as a matrimonial agreement that modified or terminated a matrimonial regime, requiring judicial approval. Additionally, we conclude La.Civ. Code art. 2343.1 is applicable and does not require the existence of a |,[Community regime in order for a valid transfer of separate property to the community to have legal effect.
DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the trial court judgment is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. While the 1977 matrimonial agreement was not made part of the record, there is no dispute William and Audrey contracted to remain separate in property. All testimony and financial records support the existence of this contractual regime. The house in question was built on immovable property acquired by William before they were married, and the house was titled separately in his name.

. For the purposes of this opinion, we classify the home and the furnishings as one asset and the Residence Agreement as a single transaction.

. Pier Marie Faget Jenkins is William's daughter from a prior marriage.

. La.Civ.Code art. 2329 provides:
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.

. See Succession of Faget, 2008-2423 (La.App. 1 Cir. 12/23/09), 30 So.2d 796.

. La.Civ.Code art. 2343.1 provides:
The transfer by a spouse to the other spouse of a thing forming part of his separate property, with the stipulation that it shall be part of the community, transforms the thing into community property. As to both movables and immovables, a transfer by onerous title must be made in writing and a transfer by gratuitous title must be made by authentic act.

. See Succession of William Edward Faget, 10-0188 (La.3/12/10), 29 So.3d 1243.

. La.Code Civ.P. art. 2133(B) provides:
A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.