## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1209

DAWN OLMSTEAD LAVIOLETTE

VERSUS

ROCKY JAMES LAVIOLETTE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20110323
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and John E. Conery, Judges.

**AFFIRMED. AMENDED JUDGMENT VACATED AS NULL.**

Peter C. Piccione, Jr.
Post Office Box 5150
Lafayette, LA   70502-5150
(337) 234-1132
COUNSEL FOR DEFENDANT/APPELLANT:
    Rocky James Laviolette

Katherine Lynn Hurst
Post Office Box 90316
Lafayette, LA   70509
(337) 233-6930
COUNSEL FOR PLAINTIFF/APPELLEE:
    Dawn Olmstead Laviolette

**Randy M. Guidry**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505**
**(337) 233-0300**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Dawn Olmstead Laviolette**

**AMY, Judge.**

After the parties' divorce, the plaintiff filed a motion to enforce an extra-judicial agreement that the couple executed prior to the granting of the divorce. At the hearing on the matter, the defendant admitted signing the document, but disputed that it was an agreement as to the division of their property. The trial court found in favor of the plaintiff, partitioning the property in line with the agreement. The defendant appeals. For the following reasons, we affirm the judgment of partition, but vacate as null the amended judgment of partition.

### Factual and Procedural Background

Dawn Laviolette filed a petition for divorce from her husband, Rocky Laviolette, in January 2011. Prior to the judgment of divorce ultimately entered in August 2011, Mr. and Ms. Laviolette began addressing the division of their property, including the immovable property accumulated during their marriage. It is undisputed that, in doing so, the parties signed two documents regarding the ownership of the property. The latter document, entitled "Joint Stipulation of Community Property and Descriptive List," was notarized and filed with the clerk of court.

Thereafter, in February 2012, Ms. Laviolette filed a "Motion to Enforce Settlement Agreement and for Judgment Approving and Homologating Agreement," alleging that that the parties had "engaged in extensive negotiations and entered into a transaction and compromise of all community property issues and reduced that compromise to writing consistent with La.C.C. Arts. 3071 and 3072." In the motion, Ms. Laviolette addressed both documents referenced above, and asserted that the initial "written compromise agreement" of April 20, 2011 was subsequently reduced to the more formal "joint stipulation of community property

and descriptive list" of May 12, 2011. Ms. Laviolette moved for a judgment approving of the latter document, which she attached to her pleading. Mr. Laviolette objected to the motion, suggesting that the agreement was without legal effect.

At the resulting hearing, Mr. Laviolette admitted having signed the May 2011 agreement. However, he asserted that the document was only meant for the parties' evaluation of the appraisals of the property and not for partition purposes. He further denied having reviewed the document in detail before signing it. Much of the testimony was directed to the May 2011 agreement's designation of Ms. Laviolette as the sole owner of a Carencro residence and its further declaration that:

> This residence is not considered community property. Dawn Michelle Olmstead Laviolette is the exclusive, sole owner of this residence as it was acquired with funds she received from a personal injury claim and is hereby excluded. Dawn Michelle Olmstead Laviolette will receive all proceeds from the sale of this property.

Ms. Laviolette suggested in her testimony that, although the settlement agreement had been at Mr. Laviolette's urging, he no longer wished to abide by the agreement after the above-described residence was destroyed by fire and insurance proceeds became available.

After hearing the parties' testimony, the trial court concluded that the May 2011 agreement constituted an extrajudicial contract between the parties wherein they agreed as to the disposition of their property. The trial court ultimately signed a judgment of partition, in which it declared that "the transaction and compromise pursuant to La.C.C. Art. 3071 as stipulated by the parties in the May 11, 2011 Joint Stipulation of Community Property and Descriptive List is hereby implemented and made Judgment of this Court[.]" The judgment listed the property assigned to

2

each party. Like the May 2011 agreement, the judgment conveyed the Carencro residence to Ms. Laviolette and reproduced the paragraph indicating that:

> This residence is not considered community property. Dawn Michelle Olmstead Laviolette is the exclusive, sole owner of this residence as it was acquired with funds she received from a personal injury claim and is hereby excluded. Dawn Michelle Olmstead Laviolette will receive all proceeds from the sale of this property.

In an amended judgment, the trial court included a provision making the judgment's conveyances of movable and immovable property "retroactive to May 11, 2011, the date of their settlement agreement." The trial court subsequently denied Mr. Laviolette's motion for new trial, an aspect of which challenged the amended judgment as an impermissive alteration to a final judgment under La.Code Civ.P. art. 1951.

Mr. Laviolette appeals.

## Discussion

*Effect of the Extra-Judicial Document*

In his brief to this court, Mr. Laviolette asserts that the trial court impermissibly gave effect to the May 2011 document. He contends that numerous provisions of both the Louisiana Civil Code and the revised statutes regarding the partition of community property prohibit the method approved of by the trial court. Having reviewed these arguments, however, we find no error in the judgment rendered by the trial court.

We first address Mr. Laviolette's contention that the trial court's acceptance of the May 2011 document permitted a circumvention of the rules of partition, namely La.R.S. 9:2801, which provides, in part, as follows:

> A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-

3

ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules . . . .

We find no merit in Mr. Laviolette's claim under this provision as the first clause of Paragraph A specifically provides for the remedy of La.R.S. 9:2801, "[w]hen the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising [] from the matrimonial regime[.]" Given both the testamentary and documentary evidence before the trial court, we find no manifest error in the trial court's recognition that the April and May 2011 documents sufficiently evidenced the parties' mutual agreement to settle their property dispute.[1] Neither do we find error in the trial court's consideration of the parties' intent, as evidenced by the documents, in rendering the ultimate

---

[1] The May 2011 document provides the following introductory paragraphs:

BEFORE the undersigned Notaries Public, personally came and appeared, Plaintiff, Dawn Michelle Olmstead Laviolette, and Defendant, Rocky James Laviolette, who after being duly sworn, stated as follows:

1.

That Plaintiff and Defendant desire to settle amicably, without the need for any judicial proceedings which involve the said issues; that in order to do so, and in consideration of their mutual agreement to amicably resolve said issues, they thereby jointly stipulate to all of the following

2.

An Agreement was entered into on April 25, 2011 by and between Rocky James Laviolette and Dawn Michelle Olmstead Laviolette, which agreement is a settlement of community property and assets. Said Agreement (hereinafter referred to as the "Agreement") is attached hereto as Exhibit A.

The April 2011 document referenced in paragraph 1 was attached to the May 2011 document and sets forth introductory language as follows:

This is an agreement written and binding, between ROCKY JAMES LAVIOLETTE and DAWN MICHELLE OLMSTEAD LAVIOLETTE. Who were legally separated on January 21, 2011. Below is an agreement both parties mutually agreed upon to separate community assets acquired during their 29 years of marriage.

judgment of partition and incidental matters. Notably, Mr. Laviolette does not here dispute that he signed the documents now at issue.

Mr. Laviolette further contends that the trial court erred in accepting the May 2011 document, since it was confected prior to divorce and was without court approval. In support of his brief argument in this regard, Mr. Laviolette references La.R.S. 9:2802, which provides that: "No judgment of partition shall be rendered unless rendered in conjunction with, or subsequent to, the judgment which has the effect of terminating the matrimonial regime." He notes that trial court had not terminated the matrimonial regime at the time the May 2011 document was executed. While Mr. Laviolette's statement is accurate in that the matrimonial regime had not been terminated at the time the parties executed the agreement, La.R.S. 9:2802 does not require that it had to be. Instead, the trial court's actions were consistent with the above-excerpted provision as it rendered the judgment of partition subsequent to the judgment of divorce, i.e., the judgment having "the effect of terminating the matrimonial regime."

Next, Mr. Laviolette points to La.Civ.Code art. 2329 for the proposition that the trial court should have placed no weight on the May 2011 document, as there was no contemporaneous judicial approval. However, Article 2329 provides:

> Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.

> Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.

5

During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.

Thus, Article 2329 specifically permits spouses to enter into a matrimonial agreement during marriage, as long as the subject matter is not prohibited by public policy. *See also Succession of Faget*, 10-0188 (La. 11/30/10), 53 So.3d 414. Certainly, the trial court could have viewed the agreement as a matrimonial agreement, insofar as it established "a regime of separation of property or modif[ied] or terminat[ed] the legal regime." La.Civ.Code art. 2328. Spouses may use a matrimonial agreement to establish "a regime of separation of property or modify the legal regime as provided by law." *Id.* Provisions of a legal regime not included or modified by a matrimonial agreement retain their force and effect. *Id.*

Returning to Mr. Laviolette's argument under La.Civ.Code art. 2329, we observe that it is only when a matrimonial agreement modifies or terminates *a matrimonial regime* during marriage that the related court consideration urged by Mr. Laviollette must follow, as seen by reference to the Article above. In *Succession of Faget*, 53 So.3d 414, the supreme court considered an agreement which pertained to the classification of only a single, discreet asset and determined that it constituted only a matrimonial agreement under Article 2328. Insofar as the matrimonial agreement "did not purport to and will not govern future acquisitions[,]" it was not one which required court approval pursuant to La.Civ.Code art. 2329. *Id*. at 419. Similarly, in this case, the May 2011 document lists various assets, both movable and immovable, and does not purport to alter acquisitions pending the ultimate disposition of the property. Rather, the document lists specific assets, and designates to whom they will be apportioned.

We note, too, that the form used by the parties satisfies the requirements of La.Civ.Code art. 2331, which provides that: "A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses." Although the parties acknowledge that the May 2011 document was not an authentic act, as the two-witness requirement of La.Civ.Code art. 1833 was not satisfied, it was, however, under private signature and acknowledged by each spouse. Both parties identified their signatures at trial.

Furthermore, we observe that La.Civ.Code art. 2336 specifically allows spouses to contractually classify property as desired, in part, as follows:

> During the existence of the community property regime, the spouses may, *without court approval*, voluntarily partition the community property in whole or in part. In such a case, the things that each spouse acquires are separate property. The partition is effective toward third persons when filed for registry in the matter provided by Article 2332.

(Emphasis added.) *See also Succession of Faget*, 53 So.3d 414.

In short, we find no error in the trial court's consideration of the parties' May 2011 agreement in rendering its judgment of partition. Mr. Laviolette's arguments in this regard lack merit.

*Amended Judgment and Motion for New Trial*

The initial judgment in this case was rendered on March 9, 2012. Subsequently, and acting upon Ms. Laviolette's "Ex-Parte Motion to Amend Judgment of Partition," the trial court rendered an amended judgment which included the following paragraph:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all property, both movable and immovable conveyed between the respective parties, Dawn Michelle Olmstead Laviolette and Rocky

James Laviolette, is conveyed between each other retroactive to May 11, 2011, the date of their settlement agreement.

The parties dispute in brief whether this amendment to the judgment was permissible as an alteration of phraseology or whether it constituted an impermissible substantive alteration of the judgment under La.Code Civ.P. art. 1951.[2] It seems clear that the addition of this provision was substantive in nature, and not one merely altering phraseology, particularly considering Ms. Laviolette's ex parte motion, which urged the trial court to "clarify ownership of each parties [sic] respective property rights conveyed to each other under the May 11, 2011 settlement agreement[.]" Accordingly, we find that the amended judgment of March 14, 2011 constitutes a nullity under La.Code Civ.P. art. 1951. We therefore vacate that judgment.

### DECREE

For the foregoing reasons, the trial court's Judgment of Partition and Incidental Matters is affirmed. The Amended Judgment of Partition and Incidental Matters if vacated as null. In light of this disposition, costs of this proceeding are assessed equally to the appellant, Rocky James Laviolette, and to the appellee, Dawn Olmstead Laviolette.

**AFFIRMED. AMENDED JUDGMENT VACATED AS NULL.**

---

[2] Article 1951 provides that: "A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party: (1) To alter the phraseology of the judgment, but not the substance[.]"