IN the MATTER OF the SUCCESSION
OF Joseph DANGERFIELD

NUMBER 2016 CA 0293

Court of Appeal of Louisiana,
First Circuit.

OCTOBER 31, 2016

R. Chris Oetjens, Baton Rouge, LA, Attorney for Appellant Ezzard Bowman

Miracle D. Myles, Plaquemine, LA, Attorney for Appellee Bridgette Shropshire

BEFORE: WELCH, CRAIN, AND HOLDRIDGE, JJ.

WELCH, J.

Ezzard Bowman, in his capacity as the executor of the Succession of Joseph Dangerfield, appeals a judgment declaring that Bridgette Shropshire had been formally acknowledged by Joseph Dangerfield, the decedent, and recognizing her as an heir of Mr. Dangerfield. For reasons that follow, we affirm the judgment of the trial court.

**BACKGROUND**

Mr. Dangerfield died on September 8, 2003. Mr. Dangerfield's succession was opened in August 2004, and Mr. Bowman, the natural son of Mr. Dangerfield, was subsequently appointed as the executor of the succession. Mr. Dangerfield's widow, Edith Dangerfield, produced for probate a document dated October 30, 2002, which purported to be the last will and testament of Mr. Dangerfield; however, by judgment signed on April 8, 2014, the trial court determined that the document was not valid as the last will and testament of Mr. Dangerfield. Thus, the effect of the trial court's judgment was that Mr. Dangerfield died intestate. See La. C.C. art. 880.

Thereafter, almost ten years after Mr. Dangerfield's succession was opened, Ms. Shropshire filed a petition seeking to be recognized as an heir of Mr. Dangerfield.[1] After a hearing, the trial court rendered judgment in favor of Ms. Shropshire declaring that she had been formally acknowledged by Mr. Dangerfield and that she be recognized as an heir of Mr. Dangerfield. See La. C.C. arts. 876 and 880. An amended judgment in conformity with the trial court's ruling was signed on April 28, 2016, and it is from this judgment that Mr. Bowman has appealed,[2] challenging the trial court's determination that Ms. Shropshire had been formally acknowledged by Mr. Dangerfield.[3]

---

1. The record before us does not contain a copy of Ms. Shropshire's petition, despite Mr. Bowman's motion to designate the record, which included Ms. Shropshire's petition as a pleading designated for this appellate record. Nevertheless, from the record and the parties' appellate briefs herein, there is no dispute that Ms. Shropshire filed a petition seeking to be recognized as an heir of Mr. Dangerfield and that this petition was filed in either June or July of 2014, almost ten years after Mr. Dangerfield's succession was opened.

2. The April 28, 2016 amended judgment was designated as a final judgment for purposes of immediate appeal in accordance with La. C.C.P. art. 1915(B). The original judgment, signed on July 27, 2015, was a partial judgment that lacked the designation of finality for appeal as required by La. C.C.P. art. 1915(B). Following a rule to show cause why the appeal should not be dismissed that was issued by this Court, the trial court issued an amended judgment that complied with La. C.C.P. art. 1915(B) and a *per curiam* setting forth the reason there was no just reason for the delay of an appeal. The merits of the rule to show cause was then referred to this panel. See **In the Matter of the Succession of Joseph Dangerfield**, 2016–0293 (La. App. 1st Cir. 8/8/16) (*unpublished action*). Based on our review of the record and the factors set forth in **R.J. Messinger, Inc. v. Rosenblum**, 2004–1664 (La. 3/2/05), 894 So.2d 1113, 1122, we find no abuse of the trial court's discretion in designating this partial judgment as final and appealable in accordance with La. C.C.P. art. 1915(B) because the judgment addresses a threshold issue that substantially impacts how the assets of the succession will be distributed, and this issue will not need further review or be mooted by future developments in these proceedings. Therefore, we maintain this appeal.

3. On appeal, Mr. Bowman also contends that the trial court erred in admitting into evidence, over his objection, a document that Ms. Shropshire received from the Social Security Administration reflecting that she received auxiliary children's benefits based on Mr. Dangerfield's record. However, we note that the contents of that document, although relevant to an action to establish filiation under La. C.C. art. 197, had no effect on the ultimate decision by the trial court or this court, which was based solely on La. C.C. art. 196 and the authentic act of donation of immovable property. See footnote 5. Therefore,

## LAW AND DISCUSSION

■ In intestate successions, the first class of intestate heirs is the descendant class. **In re Succession of Loustalot,** 2015–0631 (La.App. 1 Cir. 11/6/15), 183 So.3d 556, 558; see also La. C.C. arts. 880 and 888. Included among descendants are children born of the marriage, children that have been adopted, and children born out of wedlock whose filiation has been established, as well as descendants of them in the direct line. See La. C.C. art. 178, 179, and 3506(8); see also **Loustalot,** 183 So.2d at 558. Under the Louisiana Civil Code, there are three ways of establishing paternal filiation, or a legal relationship between a father and child: (1) the presumption of paternity due to a marriage to the mother (La. C.C. arts. 185, 186 and 195);[4] (2) in the absence of a marriage, the presumption of paternity based on a formal acknowledgement by the father (La. C.C. art. 196); or (3) in the absence of a marriage between the parents or a formal acknowledgment, by the institution of a legal proceeding to prove filiation (La. C.C. art. 197).[5] See also **Loustalot,** 183 So.2d at 558.

■ Pertinent to this appeal is the formal acknowledgement set forth in La. C.C. art. 196.[6] Louisiana Civil Code article 196 provides, in pertinent part, that "[a] man may, *by authentic act* or by signing the birth certificate, acknowledge a child not filiated to another man;" such an "acknowledgement creates a presumption that the man who acknowledges the child is the father."[7] (Emphasis added.) "An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each

---

no substantial right of Mr. Bowman was affected by the admission of this document into evidence, and thus, the error in admitting the document into evidence, if any, was harmless. See La. C.E. art. 103. Accordingly, we find no merit to this assignment of error.

4. Filiation based on the presumption of paternity due to a marriage to the mother is not an issue in this appeal.

5. In an action to establish filiation, all relevant evidence is admissible to prove paternity. See La. C.C. art. 197, comment (c). At the trial court's hearing in this matter, Ms. Shropshire offered additional evidence of Mr. Dangerfield's paternity. However, as noted at the hearing, to the extent Ms. Shropshire's action could be construed as an action to establish filiation under La. C.C. art. 197, her action was perempted because it was filed more than one year after the death of Mr. Dangerfield. See La. C.C. art. 197.

6. At the hearing on this matter, both parties agreed that La. C.C. art. 196 was the applicable code article. However, on appeal, Mr. Bowman contends that former La. C.C. art. 203 is the applicable article. Former La. C.C.

arts. 178–211 were amended and reenacted by 2005 La. Acts, No. 192, § 1 (eff. June 29, 2005) and are now comprised of La. C.C. arts. 184–198. Ordinarily, the law in effect at the time Mr. Dangerfield died (*i.e.*, the law in effect in September 2003, which was former La. C.C. art. 203) would be the law applicable to Ms. Shropshire's claim and succession rights. See La. C.C. art. 870. However, Section 3 of 2005 La. Acts, No. 192 provided that "[t]he provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date." Thus, based on the legislature's express directive, La. C.C. art. 196 is the article applicable to Ms. Shropshire's claim of formal acknowledgement rather than former La. C.C. art. 203. See La. C.C. art. 6.

7. Louisiana Civil Code article 196 was revised by 2016 La. Acts, No. 309, § 1 (eff. August 1, 2016) to eliminate signing the birth certificate as a means of accomplishing a formal acknowledgement. Pursuant to that Act, the revision has prospective effect only. Furthermore, this means of accomplishing a formal acknowledgment is irrelevant to Ms. Shropshire's claim.

notary public before whom it was executed." La. C.C. art. 1833(A).

In this case, the trial court determined that Ms. Shropshire had been formally acknowledged by Mr. Dangerfield based on an Act of Donation Inter Vivos ("the act of donation"), which was executed in East Baton Rouge Parish before a notary and two witnesses on May 12, 2003.[8] In the act of donation, Mr. Dangerfield "declared . . . [t]hat Donee, [Ms.] Shropshire, is the daughter of [Mr. Dangerfield]" and that he was donating a particularly described piece of immovable property in East Baton Rouge Parish to Ms. Shropshire "in consideration of the love and affection that he bears for [Ms.] Shropshire."[9]

In addition, the trial court relied on the factually similar case of **Mayfield v. Mayfield**, 511 So.2d 1285, 1286 (La. App. 2nd Cir. 1987), wherein the second circuit court of appeal addressed the issue of whether an authentic act of donation of immovable property could satisfy the requirements set forth in the civil code for a formal acknowledgement. In **Mayfield**, 511 So.2d at 1286, before the death of the decedent, Croford Mayfield, in 1977, the decedent and his legitimated daughter, Norma Mayfield, formally donated, by authentic act, a piece of real estate to James Mayfield in 1975, declaring therein that the donation was made "in consideration of the natural love and affection they have for their son and brother, respectively, James Mayfield." The court determined that the 1975 donation from the decedent and his legitimized daughter satisfied, in form and in substance, the requirements for a formal acknowledgment set forth in former La. C.C. art. 203, which provided that "[t]he acknowledgement of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother or either of them, or it may be made in the registering of the birth or baptism of such child." *Id.* The court further stated that the absence of the word "acknowledgment" in the authentic act did not preclude a finding that the authentic act was a formal acknowledgement. *Id.* Thus, the court held that the 1975 donation was legally sufficient as a formal acknowledgment under former La. C.C. art 203. **Mayfield**, 511 So.2d at 1286–1287.

Based on the holding in **Mayfield** and the authentic form of the act of donation wherein Mr. Dangerfield attested that Ms. Shropshire was his daughter, the trial court rendered judgment declaring that Ms. Shropshire had been formally acknowledged by Mr. Dangerfield and that she was entitled to be recognized as his heir. See La. C.C. arts. 876 and 880. On appeal, Mr. Bowman does not dispute that the act of donation meets the legal requirements of an authentic act under La. C.C. art. 1833(A); rather he contends that the substance of the authentic act of donation was insufficient to satisfy the legal requirements for a formal acknowledgement.

First, Mr. Bowman contends that the trial court ignored the requirements set forth in La. R.S. 9:392, which was enacted after the **Mayfield** decision in 1987. Mr.

---

**8.** The act of donation was recorded in the conveyance records for East Baton Rouge Parish on September 10, 2003, two days following Mr. Dangerfield's death. It was executed approximately four months prior to Mr. Dangerfield's death.

**9.** The act of donation was also in favor of Dorsey Shropshire, "the son in law of [Mr. Dangerfield]"; however, Dorsey Shropshire is not relevant to this appeal. The act of donation also contained the social security numbers (redacted) of Dorsey Shropshire, Ms. Shophsire, and Mr. Dangerfield. See La. R.S. 9:392(B) and the discussion hereinafter relative to the interpretation of that statute.

Bowman argues that La. R.S. 9:392 sets forth substantive requirements for a formal acknowledgement, which are in addition to the requirements set forth in the civil code, and that the act of donation does not contain these additional substantive requirements.

As Mr. Bowman correctly points out, La. R.S. 9:392 was enacted after the decision in **Mayfield,** and the trial court's reasons for judgment did not address this statute. See 1997 La. Acts, No. 1243, § 1 and 1998 La. Acts, 1st Ex. Sess., No. 6, § 1, eff. July 1, 1998. At the time of Mr. Bowman's death,[10] La. R.S. 9:392 provided:

A. Prior to the execution of a declaration of acknowledgment pursuant to [La. C.C. art.] 203,[11] the notary shall provide in writing, and orally or by directing them to video or audio presentations, the party or parties making the declaration of the following:

(1) Either party has the right to request a genetic test to determine if the alleged father is the biological father of the child.

(2) The alleged father has the right to consult an attorney before signing an acknowledgment of paternity.

(3) If the alleged father does not acknowledge the child, the mother has the right to file a paternity suit to establish paternity.

(4) After the alleged father signs an acknowledgment of paternity, he has the right to pursue visitation with the child and the right to petition for custody.

(5) Once an acknowledgment of paternity is signed, the father may be obligated to provide support for the child.

(6) Once an acknowledgment of paternity is signed, the child will have inheritance rights and any rights afforded children born in wedlock.

(7)(a) A party who executed a notarial act of acknowledgment may rescind the act, without cause, before the earlier of the following:

(i) Sixty days after the signing of the act, in a judicial hearing for the limited purpose of rescinding the acknowledgment.

(ii) A judicial hearing relating to the child, including a child support proceeding, wherein the affiant to the notarial act of acknowledgment is a party to the proceeding.

(b) Thereafter, the acknowledgment of paternity may be voided only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, or material mistake of fact, or that the father is not the biological father.

(8) All parties to the action have any other rights and responsibilities which may be afforded by law now or in the future.

B. In addition to the general requirements of [La. C.C. art.] 203,[12] a dec-

---

10. See La. C.C. art. 870.

11. Ms. Shropshire contends that the requirements set forth in La. R.S. 9:392, by its terms, are not applicable to her because the statute references former La. C.C. art. 203, whereas her claim arises under La. C.C. art. 196. We note that La. R.S. 9:392's reference to former La. C.C. art. 203 was eliminated after Mr. Dangerfield's death pursuant to 2004 La. Acts, No. 26 § 5. However, since we have determined, for reasons set forth hereinafter, that paragraph A of La. R.S. 9:392 does not set forth substantive requirements for the actual act of acknowledgment, we need not address the effect of the applicable statute's reference to an acknowledgement under former La. C.C. art. 203 when Ms. Shropshire's claim of acknowledgment is governed by La. C.C. art. 196, i.e., whether there is a loophole in the law (in favor of Ms. Shropshire) due to legislative oversight. See footnote 6.

12. Again, we note that Ms. Shropshire argues the requirements set forth in La. R.S. 9:392, by its terms, are not applicable to her because

laration of acknowledgment of an illegitimate child shall include [8]the social security numbers of the father and mother, and, in accordance with the provisions of 42 U.S.C. 652(a)(7), shall include all minimum requirements specified by the secretary of the United States Department of Health and Human Services. Failure to recite a party's social security number as required herein shall not affect the validity of the declaration.

The determination as to whether, as Mr. Bowman suggests, La. R.S. 9:392 sets forth substantive requirements for a formal acknowledgement that are in addition to the requirements set forth in the civil code is a matter of statutory interpretation. The fundamental question in all cases involving statutory interpretation is legislative intent. **City of DeQuincy v. Henry,** 2010–0070 (La. 3/15/11), 62 So.3d 43, 45. Further, according to the general rules of statutory interpretation, our interpretation of any statutory provision begins with the language of the statute itself. **In re Succession of Faget,** 2010–0188 (La. 11/30/10), 53 So.3d 414, 420. When a law is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. **McGlothlin v. Christus St. Patrick Hos-**

pital, 2010–2775 (La. 7/1/2011), 65 So.3d 1218, 1227–1228. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. **McGlothlin,** 65 So.3d at 1228. Words and phrases must be read with their context and construed according to the common and approved usage of the language. *Id.*

As set forth above, at the applicable time period, La. R.S. 9:392 was comprised of two paragraphs: paragraph A, which was enacted by 1998 La. Acts, [9]1st Ex. Sess., No. 6 § 2, eff. July 1, 1998; and paragraph B, which was originally enacted by 1997 La. Acts, No. 1243, § 1, and then, without any substantive change, was designated as paragraph B by 1998 La. Acts, 1st Ex. Sess., No. 6 § 2, eff. July 1, 1998.[13] Accordingly, we will address the statutory construction of each paragraph separately.

■ Paragraph A of La. R.S. 9:392 provides that "[p]rior to the execution of an acknowledgment of paternity" pursuant to the civil code, "the notary shall provide" the party making the acknowledgment "orally" and "in writing" of specific legal rights and obligations with respect to acknowledgment, as well as the circumstances under and time limits within which the acknowledgement can be rescinded. Giving these words and phrases their generally prevailing meaning, we cannot say

the statute references former La. C.C. art. 203, whereas her claim arises under La. C.C. art. 196 and that La. R.S. 9:392's reference to former La. C.C. art. 203 was eliminated after Mr. Dangerfield's death pursuant to 2004 La. Acts, No. 26 § 5. Although we have determined, for reasons set forth hereinafter, that Paragraph B of La. R.S. 9:392 does set forth a substantive requirement for the actual act of formal acknowledgment, the statute specifically provides that the failure to include such information does not affect the validity of the act of acknowledgment. Thus, we need not address the effect of the applicable statute's

reference to former La. C.C. art. 203 when Ms. Shropshire's claim is governed by La. C.C. art. 196, *i.e.,* whether there is a loophole in the law (in favor of Ms. Shropshire) due to legislative oversight. See footnotes 5 and 11.

13. Louisiana Revised Statutes 9:392 was also amended by 2004 La. Acts, No. 26, § 5; 2006 La. Acts, No. 344, § 4, eff. June 13, 2006; 2006 La. Acts No. 470, § 1, eff. June 22, 2006, and 2010 La. Acts No. 173, § 1. However, those amendments are not pertinent to this appeal.

that this paragraph imposes substantive requirements (in addition to those set forth in the civil code) that must be contained within the act of acknowledgement; rather, we find that it clearly and unambiguously imposes a duty on the notary—prior to the execution of a declaration of acknowledgement—to provide specific notice to the party making the acknowledgment of the legal consequences of the act.[14]

On the other hand, paragraph B specifically provides that "[i]n addition to the general requirements of" the civil code, "a declaration of acknowledgment ... shall include the social security numbers of the father and mother;" however, the "[f]ailure to recite a party's social security number ... shall not affect the validity of|₁₀the declaration." Based on the clear and unambiguous terms of paragraph B, we find that it does set forth a substantive requirement for an act of acknowledgment, i.e., the social security numbers of the father and mother, which is in addition to the general requirements of an act of acknowledgement set forth in the civil code.[15] However, paragraph B further sets forth,

clearly and unambiguously, that the failure to include a party's social security number does not affect the validity of the acknowledgment—in other words, the failure to include this additional substantive requirement in the act of acknowledgment does not affect the validity of it.

■ Therefore, reading La. R.S. 9:392 in conjunction with the rules of statutory construction, we find that paragraph A (La. R.S. 9:392(A)) does not set forth substantive requirements for a formal acknowledgement which must be set forth in the acknowledgement; it imposes a duty on the notary to inform the person signing the acknowledgment of the legal consequences of the act prior to its execution.[16] However, we find that paragraph B (La. R.S. 9:392(B)) does set forth a substantive requirement for a formal acknowledgement, which is in addition to the general requirements set forth in the civil code. Notably, in this case, the act of donation sets forth the social security numbers of both Ms. Shropshire and Mr. Dangerfield, but it does not contain the social security

14. Furthermore, if there was any doubt as to the legislature's intent behind paragraph A and whether it sets forth a substantive requirement for an act of acknowledgement, we note that the preamble to the act enacting paragraph A provides that it is was "AN ACT to ... require notice of consequences of signing acknowledgement of paternity prior to signing notarial act...." 1998 La. Acts, 1st Ex. Sess., No. 6. See **Green v. Louisiana Underwriters Ins. Co.,** 571 So.2d 610, 613–614 n.6 (La. 1990) (although generally the preamble of an act of the legislature is not part of the law, it can be utilized to discern the intent of the legislature, if there is doubt as to the meaning of the statute).

15. Furthermore, if there was any doubt as to the legislature's intent behind paragraph B and whether it sets forth a substantive requirement for an act of acknowledgement, we note that the preamble to the act originally enacting paragraph provides that it is was "AN ACT ... to provide with respect to the

minimum requirements of a declaration of acknowledgement ...." 1997 La. Acts, No. 1243. See **Green,** 571 So.2d at 613–614 n.6.

16. Louisiana Revised Statutes 9:392(A) does not set forth the consequences of a notary's failure to so advise the person signing the acknowledgment. Other than Mr. Bowman's contention that the requirements set forth within La. R.S. 9:392 must be contained within the act of acknowledgement and that the act of donation does not contain these requirements, Mr. Bowman has not otherwise challenged the notary's compliance with La. R.S. 9:392(A), and the record herein does not reflect whether the notary before whom the act of donation was executed did or did not comply with the duty set forth in La. R.S. 9:392(A). Although the notary testified at the hearing and identified her signature on the act of donation, she had no specific recollection of its execution, and neither party questioned the notary as to her compliance with La. R.S. 9:392.

number of Ms. Shropshire's mother. However, pursuant to the express terms of La. R.S. 9:392(B), the failure of the act of donation to include the mother's social security number does not affect the validity of Mr. Dangerfield's formal acknowledgement of Ms. Shopshire. Thus, Mr. Bowman's argument that the act of donation was insufficient to constitute a formal acknowledgment because it failed to include the substantive requirements of La. R.S. 9:392 lacks merit.

Next, citing **Turner v. Busby**, 2003-3444 (La. 9/9/04), 883 So.2d 412, 418, Mr. Bowman argues that in order for an authentic act acknowledging paternity to serve as a formal acknowledgment, the act must reveal an intent to legitimize by notarial act. He claims that the act of donation did not express or reveal an intent to legitimize Ms. Shropshire, therefore it cannot constitute a formal acknowledgment. However, we find no merit to Mr. Bowman's argument that a formal acknowledgment must express an intent to legitimize, and we find that his reliance on **Turner** for such argument is misplaced. **Turner**, which was decided in 2004 (prior to the 2005 La. Acts, No. 192 repeal of former La. C.C. arts. 178-211 and the amendment and reenactment of those articles to now comprise La. C.C. arts. 184-198), makes no such holding or statement. In addition, his argument confuses two separate and distinct legal concepts under the former provisions of the civil code relative to a legal relationship between parent and child, *i.e.*, former La. C.C. arts. 178-211.

Under the former provisions of the civil code, children were either legitimate, illegitimate, or legitimated. See former La. C.C. art. 178 and 181. Pursuant to former La. C.C. art. 203, an illegitimate child could be acknowledged by the father and/or the mother by making a declaration executed before a notary in the presence of two witnesses or by declaration made in the registering of the birth or baptism of the child. Although former La. C.C. art. 203(B) provided that an acknowledgment by notarial act was deemed a legal finding of paternity, an act of acknowledgment did not legitimate the child. See **Turner**, 883 So.2d at 418. If a parent wished to legitimize a child, they could do so by a notarial act declaring it was the intention of the parent to legitimate such child. See former La. C.C. art. 200; **Turner**, 883 So.2d at 418. Thus, an expression of an intent to legitimize was a required legal element of an authentic act to legitimate an illegitimate child under former La. C.C. art. 200; it was not a required element of an authentic act or formal acknowledgement of an illegitimate child under former La. C.C. art. 203.

In **Turner**, 883 So.2d at 414, which was a wrongful death and survival action, the issue essentially involved whether the defendants could challenge the plaintiff's status as a child of the decedent. Many years before the decedent's death, the decedent, in a criminal child support proceeding, entered into several stipulated judgments of his paternity of the plaintiff, all of which conformed to the legal requirements of a formal acknowledgment before a notary and two witnesses under former La. C.C. art. 203. **Turner**, 883 So.2d at 414-418. After the wrongful death and survival action was filed, DNA testing revealed that the plaintiff was biologically unrelated to the decedent. **Turner**, 883 So.2d at 415.

The plaintiff claimed, on various grounds that the defendants were not entitled to challenge the stipulated judgments of paternity or the formal acknowledgment by the decedent. **Turner**, 883 So.2d at 415. The Louisiana Supreme Court ultimately concluded that the defendants were entitled to challenge the plaintiff's status. **Turner**, 883 So.2d at 419-420.

In doing so, the Court found that the stipulated judgments of paternity did not have a conclusive effect between the plaintiff and the defendants. **Turner**, 883 So.2d at 417. In addition, the Court noted that the formal acknowledgments executed by the decedent did not contain a declaration of the decedent's intention to legitimize the plaintiff. **Turner**, 883 So.2d at 418. Thus, because the plaintiff was not a legitimate child at the time the wrongful death and survival action commenced, but rather, was a formally acknowledged illegitimate child under former La. C.C. art. 203, the plaintiff's claim as an illegitimate child was subject to scrutiny pursuant to former La. C.C. |₁₉art. 207, which provided that "[e]very claim set up by illegitimate children, may be contested by those who have any interest therein."

Accordingly, **Turner** provides no support for Mr. Bowman's argument that an authentic act acknowledging paternity must reveal an intent to legitimize in order to serve as a formal acknowledgment lacks merit. An act to legitimate pursuant to former La. C.C. art. 200 and an act of acknowledgement pursuant to former La. C.C. art. 203 were two separate and distinct legal concepts with different legal consequences. The intent to legitimize or legitimate was an element of an act to legitimate; it was not a required element of

an act of or a formal acknowledgment under former La. C.C. art. 203. Likewise, the intent to legitimate cannot be a required element of an act of acknowledgement under La. C.C. art. 196.[17]

Accordingly, based on our review of the record and applicable law, including the **Mayfield** decision discussed hereinabove, we find no error in the trial court's conclusion that the act of donation was an authentic act and that the statement therein by Mr. Dangerfield that Ms. Shropshire was his daughter satisfied in form and in substance the legal requirements set forth in La. C.C. art. 196 for a formal acknowledgment.[18] Although the act of donation does not set forth the social security number of Ms. Shropshire's mother, as required by La. |₁₄R.S. 9:392(B), the failure to include that information does not affect the validity of Mr. Dangerfield's formal acknowledgment. Therefore, the judgment of the trial court declaring that Ms. Shropshire had been formally acknowledged by Mr. Dangerfield and that she was entitled to be recognized as his heir is affirmed.

## CONCLUSION

For all of the above and foregoing reasons, this appeal is maintained and the April 28, 2016 amended judgment of the trial court is affirmed.

---

**17.** Furthermore, we note that after the revision of the Louisiana Civil Code articles with respect to parent and child by 2005 La. Acts, No. 192, the law no longer provides for act to legitimate a child. Indeed, the terms "legitimate" and "illegitimate" are no longer used in Louisiana law to describe children; the appropriate term is a child born of marriage and a child born outside of marriage. See 2004 La. Acts, No. 26. Since the concept of legitimate or legitimizing no longer exists under Louisiana law, it cannot be a required element of an act of acknowledgment under La. C.C. art. 196.

**18.** As noted, in **Mayfield**, the applicable civil code article relating to a formal acknowledge-

ment was former La. C.C. art. 203(A). Although former La. C.C. art. 203 was replaced by La. C.C. art. 196, see footnote 5, the form and substance requirements of a formal acknowledgment were not changed; rather, the change in the law pertained to the legal effect of the formal acknowledgement, *i.e.*, a rebuttable presumption of paternity was created rather than a legal finding of paternity. See La. C.C. art. 196, comments (a), (b), and (c). Thus, the holding of **Mayfield** as to whether a donation in authentic form can satisfy the requirements, in form and in substance, of a formal acknowledgment remains persuasive.

All costs of this appeal are assessed to the appellant, Ezzard Bowman.

**APPEAL MAINTAINED; JUDGMENT AFFIRMED.**

Crain J., concurs and assigns reasons

**CRAIN, J., concurring.**

The notifications required by Louisiana Revised Statute 9:392A were enacted to comply with federal legislation enacted in 1996 that, in relevant part, mandated certain measures to improve the effectiveness of child support enforcement programs administered by the states. *See* 42 U.S.C.A. 666(a)(5); *see also* Spaht, *Who's Your Momma, Who Are Your Daddies? Louisiana's New Law of Filiation*, 67 La. L. Rev. 307, 320, 324 (2007). On their face, the disclosures appear to be intended to inform a putative father of his rights before he signs an act of acknowledgement, as well as the obligations and other legal consequences that will arise thereafter. However, as pointed out in the opinion, Section 9:392 does not require that the acknowledgment contain a recitation of the disclosures or otherwise confirm that the disclosures were provided by the Notary. In my opinion, the failure of a Notary to make the disclosures affects the validity of the instrument only insofar as that fact might be supportive, although not determinative, of a claim seeking to annul the act of acknowledgment on grounds of fraud, duress, or mistake pursuant to Subsection 9:392A(7)(b). *See also* La. R.S. 9:406B(1) (effective August 1, 2016). The disclosures, or lack thereof, may be an element of proof in such an action.

Here, the parties do not dispute that the donation containing the acknowledgment is an authentic act. As such, the instrument constitutes full proof of its contents and is clothed with a presumption of genuineness. *See* La. Civ. Code art. 1835; *Bank of New York Mellon v. Smith*, 15–0530 (La. 10/14/15, 11), 180 So.3d 1238, 1245 n.5. As the party attacking the validity of the acknowledgment, Shropshire had the burden of proving fraud, duress, or mistake. *See* La. R.S. 9:392A(7)(b); *Couvillion v. Couvillion*, 03–2006 (La.App. 1 Cir. 6/25/04), 886 So.2d 474, 475, *writ denied*, 04–1892 (La. 10/29/04), 885 So.2d 596 (burden of proof placed on party attacking authentic act). The evidence presented at the hearing did not establish whether the Notary complied with the disclosure requirements of Section 9:392A. This *absence* of evidence is not sufficient to satisfy Shropshire's burden of proving the invalidity of the acknowledgment under Subsection 9:392A(7)(b). The trial court did not err in denying Shropshire's claim.