STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1033


SHELTON W. ERIKSON

VERSUS

ROBERT W. FELLER, JR.


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 56,727
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**William D. Dyess**
**Dyess Law Firm**
**Post Office Drawer 420**
**Many, LA   71449**
**(318) 256-5667**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    Shelton W. Erikson

**Nathaniel G. Williams**
**Williams Family Law Firm, L.L.C.**
**Post Office Box 15**
**Natchitoches, LA   71458-0015**
**(318) 352-6695**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Robert W. Feller, Jr.

AMY, Judge.

The plaintiff brought an action against his grandson to revoke a donation of property based on the grandson's ingratitude toward him. The trial court found in favor of the plaintiff and revoked the donation. The grandson now appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The record of the proceedings below indicates that the plaintiff, Shelton W. Erikson, executed an Act of Donation, conveying property that he owned in Sabine Parish to his grandson, Robert W. Feller, Jr., on January 26, 2001.[1] Mr. Erikson retained a lifetime usufruct over the property, which, according to his testimony, consisted of "an older camp framed house" and a mobile home situated beside each other and separated by a driveway. Both parties testified that the donation was effected due to a civil child molestation suit filed against Mr. Erikson. The defendant testified that following the donation, he and his wife moved into the frame house on the property and the parties lived congenially as neighbors for more than a year. The parties disagree regarding the event that triggered the dispute which led to this litigation.

The record reflects that the plaintiff alleged that the two men had an understanding that in exchange for the land, Mr. Feller would take care of him so that he would never have to enter a nursing home. Mr. Erikson further alleged that Mr. Feller became enraged when he learned of his (Mr. Erikson's) intent to marry his current-wife, Charlotte Kreuger Erikson. According to Mr. Erikson's testimony, Mr. Feller stated that Mr. Erikson was "putting her (Charlotte) before family" and told him that "[t]he deal is off." Mr. Erikson alleged that, in response to the marriage, Mr.

---

[1] The Act of Donation was signed and authenticated on January 26, 2001, and was filed into the official records on January 29, 2001.

Feller threatened to send him to prison and subsequently fabricated a story that Mr. Erikson molested his son and then pulled a pistol on him and falsely reported it to Mr. Erikson's parole officer. Mr. Erikson testified that he was arrested for being in possession of a firearm.

The defendant, however, testified that there was no formal agreement regarding Mr. Erikson's care, although he had gratuitously taken care of his grandfather. The record reflects that, at trial, Mr. Feller acknowledged a conversation regarding his disapproval of his grandfather's marriage, but he averred that the wedding was not the catalyst for the charges. Mr. Feller instead alleged that he left his infant son with Mr. Erikson one afternoon while his wife and he went fishing elsewhere on the property. He testified that when they returned, his wife expressed a concern to him that "something was wrong with my child" and that he then went next door to confront Mr. Erikson. Mr. Feller maintained that Mr. Erikson had a pistol and sent him away. Mr. Feller alleged that he then reported these facts to the District Attorney's office, which, he stated, suggested that Mr. and Mrs. Feller only proceed on the firearm possession violation and not the child molestation claims.

Although the record is unclear as to the specific dates of Mr. Erikson's incarceration, it is clear that the parties and their spouses were unable to co-exist peacefully as neighbors after his arrest. On December 5, 2003, the plaintiff filed a "Petition for Injunctive Relief, to Revoke Donation Inter Vivos, False Imprisonment and Damages." Mr. Erikson based his injunction request on the defendant's attempt to evict him and his wife from the property by taping an eviction letter to the door of the mobile home. He also asserted that the donation should be revoked because it was obtained through the use of fraud, error and duress.

2

The record reflects that the defendant also requested injunctive relief, filing a "Petition for Protection from Abuse" from the plaintiff and his wife on December 18, 2003. The defendant alleged that Ms. Erikson had damaged his truck by striking it with a board and puncturing the tires on more than one occasion; broken the water pipes with a wrench, requiring replacement of the flooring in the frame house; terminated the services for the utilities to the frame house, and; unlawfully entered the frame house and a shed and stolen various building supplies. The defendant further alleged at trial that Ms. Erikson falsely accused him of "peeping" into her windows and that in response to the vandalism, he had purchased a surveillance system which consisted of a camera pointed at Mr. Erikson's residence with an attached monitor in Mr. Feller's residence.

The trial court granted mutual restraining orders on January 12, 2004, but the record reflects that the plaintiff took residence in a local hotel pending disposition of the matter, out of a concern that future problems between the parties would arise.[2] The plaintiff filed a First Amending and Supplemental Petition on the defendant, which added notice of eviction proceedings to the revocation action.[3] The trial court ruled on the issue of revocation of the donation first as exceptions raised by the defendant related to the eviction action, which would be rendered moot if the

_____

[2] Mr. Erikson's attorney stated at the hearing on the Rule to Vacate Premises subsequent to the trial:

> Mr. Erickson [sic] has been living at the – at a local hotel since that time because of his fear of going back and being charged with a crime of which he denies he's ever committed or charged with something to put him in jail. And he's fearful that his grandson will conjure up some sort of allegations and will, you know, place him in jail because he is on probation.

[3] In response, the defendant filed Exceptions of Prematurity and Vagueness. The Exception of Prematurity was granted on March 18, 2004, with time provided to allow for the proper delays for eviction. Thereafter, the defendant raised a number of exceptions, including Insufficiency of Service of Process, Unauthorized Use of a Summary Proceeding, No Cause of Action and No Right of Action.

donation were revoked. Following a bench trial on the merits, the trial court ruled in favor of the plaintiff, revoking the donation on the basis of ingratitude and restoring full ownership of the property to Shelton Erikson.

Mr. Feller appeals, asserting as error that the district court erred in finding that grounds existed to revoke the donation to Robert Feller on the basis of ingratitude.

**Discussion**

A defining element of the inter vivos donation is that it must be made "at present and irrevocably[.]" La.Civ.Code art. 1468. However, the Louisiana Civil Code does allow for the revocation of an inter vivos donation for four express causes, one of which is ingratitude. La.Civ.Code art. 1559.[4] Ingratitude is specifically defined in La.Civ.Code art. 1560 to include only three instances: "1. If the donee has attempted to take the life of the donor; 2. If he has been guilty towards him of cruel treatment, crimes or grievous injuries; 3. If he has refused him food, when in distress." This case concerns the second circumstance.

In *Porter v. Porter*, 36,007, p. 7 (La.App. 2 Cir. 6/12/02), 821 So.2d 663, 667-68 (citations omitted), the second circuit explained that:

> Grievous injuries sufficient to revoke a donation have been defined as any act naturally offensive to the donor. The jurisprudence has held that cruel treatment or grievous injury sufficient to revoke a gratuitous donation may include adultery by a spouse, seizing property belonging to a parent, filing suit against a parent alleging criminal activity, and slandering the memory of the donor.

In *Spruiell v. Ludwig*, 568 So.2d 133, 138 (La.App. 5 Cir. 1990)(*quoting* 4 C. Aubry

---

[4] Louisiana Civil Code Article 1559 (alteration in original) states:
Donation [Donations] *inter vivos* are liable to be revoked or dissolved on account of the following causes:
  1. The ingratitude of the donee;
  2. The non-fulfillment of the eventual conditions, which suspend their consummation;
  3. The non-performance of the conditions imposed on the donee;
  4. The legal or conventional return.

& C. Rau, COURS DE DROIT CIVIL FRANCAIS, § 708 (La.State Law Institute Trans. Vol. 3, 1965)), *writ denied,* 573 So.2d 1117 (La.1991), the court stated:

> Injuries include any act naturally offensive to the donor. It may be the adultery of one of the spouses.... The act may consist of slanderous charges; of a seizure levied by the donee against the donor of whom he is creditor; or, in the proper case, even of a refusal to consent to the revocation.

*See also Perry v. Perry,* 507 So.2d 881 (La.App. 4 Cir.), *writ denied* 512 So.2d 465 (La.1987).

In *Perry*, 507 So.2d 881, a son obtained a judgment against his father to collect money his father had guaranteed him to finance a law practice. In order to effect collection on the judgment, the son seized various items of the father's personal property from his parents' home. *Id.* The fourth circuit found that this act constituted a "grievous injury" and was therefore sufficient cause for revocation of donations that the father had made to the son. *Id.* at 883.

The fifth circuit also considered what comprises "cruel treatment, crimes or grievous injuries" under Article 1560 in *Spruiell*, finding that a daughter/donee's act of filing a shareholder's derivative suit against her mother/donor was not sufficient cause alone for a revocation of donations of stock in several family corporations.[5] *Spruiell*, 568 So.2d 133. However, the court did find that the daughter's reconventional demand in response to the revocation action "implied unfounded claims of criminal activity." *Id.* at 138. The court held that these unfounded allegations were unnecessary to the shareholder's derivative action and were sufficient cause to revoke the mother's donations. *Id.* The court found that the

---

[5] The *Spruiell* court found that the plaintiffs in a derivative action are "only nominal plaintiffs whose right to recover can only be asserted secondarily[.]" to the corporation. *Spruiell*, 568 So.2d at 137. Thus, the court declined to hold that "allegations of breach of fiduciary duty contained in the shareholder derivative pleadings asserting the corporations' right to recovery are sufficient to constitute grievous injury under the Civil Code." *Id.* at 137-38.

daughter and her children "sought to obtain more of the family property for themselves[]" and initiated the shareholder's derivative action and made the allegations of criminal conduct as a means to procure the property. *Id.* at 138.

Finally, in *Porter*, 821 So.2d 663, the court was called on to consider whether any of a number of acts constituted sufficient evidence of ingratitude to revoke the donation of equipment, land and a share of the family business from a father to his son and grandson.[6] The court found that the acts were not sufficient cause for revocation due to ingratitude because they were not offensive in nature, "but were largely defensive measures aimed at preservation of life, livelihood and property. They were not committed maliciously or in total disregard for the well-being of the defendant." *Porter*, 821 So.2d at 670 (footnote omitted). Citing the "rough language and lifestyle common to the parties," the appellate court found that "[u]nder ordinary circumstances, the instances alleged by the defendant would appear, at first blush, to demonstrate ingratitude by the plaintiffs. In light of the unusual family dynamics present in this case, we find that the trial court did not err in finding otherwise." *Id.*

In granting a revocation in the present case, the trial court found the facts analogous to those of *Perry*, based on Mr. Erikson's retention of a usufruct over the property.

---

[6] The donor cited six acts committed by the donees which he claimed were sufficient grounds for revocation due to ingratitude, namely:

1. Filing suit and getting a TRO to prevent the defendant [donor] from pursuing his livelihood.
2. Making threats to beat the defendant.
3. Taking the defendant's truck, briefcase and checkbook and refusing to return the checkbook as of the date of trial.
4. Accusing the defendant of theft and attempting to have him arrested.
5. Drawing a weapon on a person thought to be the defendant.
6. Intentionally running into a truck occupied by the defendant.

*Porter*, 821 So.2d at 668.

6

When Mr. Erickson [sic] donated the property to Mr. Feller, and retained the usufruct in his own favor, Mr. Erickson [sic] retained the right to possess the property and to derive the utility, profits and advantages produced by the property. When Mr. Feller attempted to evict Mr. and Mrs. Erickson [sic], in essence, he attempted to seize Mr. Erikson's rights as usufructuary.

The trial court also analogized this case to *Spruiell*, finding that the "veiled allegations" of child molestation were "unnecessary" and lacked evidentiary proof, "other than that the child's bottom was red and looked funny after a visit with Mr. Erickson [sic]." The court noted that the defendant never brought charges on the claim, "but instead hinted to the court, both in testimony and in pleadings, that Mr. Erickson [sic] molested Mr. Feller's child[,]" and instead pursued charges on a different claim.

A trial court's finding of fact may not be set aside by an appellate court in the absence of manifest error or unless it is clearly wrong. *Stobart v. DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The determination as to whether a donee has committed a "grievous injury" upon a donor depends heavily upon the facts and circumstances specific to the case. "The trial court heard the testimony in its entirety and has a first hand impression of the credibility of all the witnesses." *Spruiell*, 568 So.2d at 138. In this case, the trial court heard the various allegations made by both parties and considered the testimony of each party, as well as the defendant's spouse and mother (who is also the daughter of the plaintiff).

Our review of the record reveals no manifest error in the trial court's determination that the plaintiff proved sufficient grounds for revocation of the donation of the property on grounds of ingratitude through "cruel treatment, crimes or grievous injuries." Although the defendant asserts that the jurisprudence relied upon by the trial court is dissimilar to the present matter, we disagree. While perhaps

not factually identical to the instant matter, the cases are instructive as the type of circumstances which courts have found constituted a finding of ingratitude. The present case, given the factual findings of the trial court, is consistent with that jurisprudence. Here, the trial court found that the defendant attempted to deprive the plaintiff of his rights as a usufructuary and, furthermore, that molestation allegations were not otherwise substantiated. These determinations are supported by the evidence in the record. Accordingly, this assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court in favor of the plaintiff, Shelton W. Erikson, is affirmed. All costs of this proceeding are assigned to the defendant, Robert W. Feller, Jr.

**AFFIRMED.**