NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1030

ROSE KLINGER ADAMS

VERSUS

JIMMY G. ADAMS

CONSOLIDATED WITH

17-1031

JIMMY G. ADAMS

VERSUS

ROSE KLINGER ADAMS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20123433 C/W 20152454
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

D. KENT SAVOIE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and D. Kent Savoie, Judges.


REVERSED IN PART, AND RENDERED;
AFFIRMED IN PART.

**Randy J. Fuerst**
**Fuerst Law Firm**
**130 W. Kirby Street**
**Lake Charles, LA 70601**
**(337) 436-3332**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Jimmy G. Adams**

**Allan L. Durand**
**235 Rue France**
**Lafayette, LA 70508**
**(337) 237-8501**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rose K. Adams**

**SAVOIE, Judge.**

In these consolidated matters, Dr. Jimmy Adams appeals the trial court's denial of his petition seeking the return of his separate property from his former wife, Rose Klinger Adams, and also his petition seeking the revocation of inter-spousal donations made to her during their marriage. For the following reasons, we reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Adams and Ms. Adams were married in 1993, and they resided in Dr. Adams' separate property home on Beverly Drive in Lafayette. They had a prenuptial agreement that established a separate property regime between them. They had two sons, one of whom was born on November 26, 1996, and the other on March 24, 1998.

Dr. Adams owned an art gallery, which was his separate property. According to Dr. Adams, he had been a continuous collector of art for thirty years before investing in the art gallery, he chose the pieces that went into the gallery, and he anticipated that the artwork purchased by the gallery would be resold. The gallery closed in approximately 2008 or 2009, and the art pieces in the gallery were brought to Dr. Adams' home, where he and Ms. Adams resided.

In June of 2012, Dr. Adams was working as an assistant professor at a college in Maryland. On June 19, 2012, Ms. Adams filed a petition for divorce while Dr. Adams was in Maryland. According to Ms. Adams, she moved out of Dr. Adams' separate home on Beverly Drive and into a home on Brookshire, which was purchased for her by her mother. Dr. Adams returned to Lafayette, and he filed a reconventional demand for divorce on July 5, 2012.

After Dr. Adams returned to Lafayette, he suffered a stroke during a medical procedure, and thereafter went to live at a home in Youngsville, which was owned

by a friend. He indicated that the art pieces from the gallery that were previously located in his Beverly Drive home were moved to storage.

According to Dr. Adams, while he was recovering from his stroke, Ms. Adams drove to Youngsville and asked him to reconcile their marriage, which he agreed to do. Dr. Adams moved into Ms. Adams' home on Brookshire on September 1, 2012. Around that time, the artwork was moved into the Brookshire home. On October 10, 2012, the parties' respective divorce petitions were dismissed pursuant to joint motions. They thereafter resided as husband and wife in the Brookshire home.

In March 2015, Dr. Adams left for a mission trip to Africa, and he returned on approximately May 4 or 5, 2015, after having stopped over in Paris. While he was in Paris, he purchased a purse for Ms. Adams. According to Ms. Adams, on May 13, 2015, Dr. Adams "left," and on May 15, 2015, she changed the locks to the Brookshire home, even though he did not have a key. According to Dr. Adams, however, he did have a key and he tried to enter the matrimonial home on May 18, 2015, but to his surprise, the key did not work. In the meantime, Ms. Adams was out of town, and she instructed her neighbors to call the police after being informed of Dr. Adams' presence at the home. The police arrived, and according to Dr. Adams, he was handcuffed. Ms. Adams disputes this.

Dr. Adams filed for divorce on May 19, 2015. On that date, he also obtained an *ex parte* order allowing him "to go to the former family home at 107 Brookshire . . . with a law enforcement escort to remove his personal property, including his personal wearing apparel, essential medicines, and other items necessary for his safety and well-being." He also obtained a temporary restraining order enjoining Ms. Adams from encumbering or disposing of any of his separate property, "including his separately-owned art collection." According to Dr.

2

Adams, on May 29, 2015, he went to the Brookshire home in accordance with the May 19, 2015 order and put as many of his belongings into his vehicle that he could, but that he was not able to fit all of the artwork and sculptures into his vehicle.

On June 3, 2015, Ms. Adams filed an answer and reconventional demand, asserting that Dr. Adams violated the May 19, 2015 order "by appearing at the home of [Ms.] Adams at 107 Brookshire . . . after May 19, 2015[,] without notice, and not in the presence of a law enforcement officer, to remove some of his personal property." On June 5, 2015, the trial judge signed an order attached to Ms. Adams' answer and reconventional demand issuing a temporary restraining order to Dr. Adams "forbidding him from going to the home of [Ms.] Adams at 107 Brookshire . . . , and further prohibiting him from having direct contact with [Ms.] Adams."

On September 3, 2015, Dr. Adams filed a petition seeking the return of movable property located in the Brookshire home that he asserted he acquired with separate funds during the parties' marriage, including various artwork and sculptures. Therein, he alleged that Ms. Adams refused to return the property to him and that she obtained a restraining order preventing him from coming to her house to retrieve them.

Dr. Adams filed an amended petition on June 3, 2016, seeking to revoke any and all inter-spousal donations made to Ms. Adams on the grounds of Ms. Adams' alleged ingratitude, including allegations of adultery. The petition specifically listed items of jewelry that he had given to her.

A trial was held on Dr. Adams' original and amended petitions on June 26, 2017. At issue was (1) various artwork that Ms. Adams claims she was not in possession of; (2) whether Dr. Adams had donated certain artwork and sculptures

located in Ms. Adams' home on Brookshire to Ms. Adams or their sons as gifts, so that they had become Ms. Adams' separate property, and if he had, whether the donations should be revoked for ingratitude; and (3) whether Dr. Adams' gifts of jewelry, furniture, and the purse from Paris, should be revoked for ingratitude.

On July 27, 2017, the trial judge signed an order denying Dr. Adams' petitions, stating that both were denied because of "Plaintiff's failure to meet his burden of proof."

Dr. Adams appeals, asserting the following assignments of error:

1. The trial [c]ourt applied the wrong burden of proof as it relates to return of separate property.

2. The trial [c]ourt erred in denying Dr. Adams' action for return of separate property.

3. The trial [c]ourt erred in finding that both parties did not have 'clean hands' as it relates to the cause of action for revocation of donations and that Dr. Adams failed to meet his burden of proof with regard to the actions of Rosie Adams being sufficient to result in a finding of ingratitude.

4. The trial [c]ourt erred in denying Dr. Adam's [sic] request for revocation of donations due to ingratitude.

## ANALYSIS

### Standard of Review:

As recognized by the Louisiana Supreme Court in *Evans v. Lungrin*, 97-541, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735 (citations omitted)

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law

4

skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*.

## Return of Dr. Adams' Separate Property Not in Ms. Adams' Possession

During trial, Dr. Adams sought the return of the following items that Ms. Adams testified were not in her possession: a Ramon Kelley rabbit painting; coil snake figurines; two paintings of a cheetah and a painting of a zebra; paintings of an elephant, buffalo, and bird; a painting of a zebra; a painting of a puma; a painting of a church; animal figurines; and an owl picture.

We find that the trial court did not err in placing the burden on Dr. Adams to prove that these items were in fact in Ms. Adams' possession; therefore, we review the trial court's ruling as to these items for manifest error. The only definitive evidence concerning the whereabouts of these items is Ms. Adams' testimony indicating that these items were not in her possession or otherwise in her home on Brookshire. Therefore, the record supports the trial court's ruling as to these items, and we affirm the trial court's judgment to that extent.

## Property in Ms. Adams' Possession Claimed to be Gifts

Dr. Adams also seeks the return of the following artwork that Ms. Adams admits is located in the Brookshire home, but which she asserts is her separate property because Dr. Adams gave them to her or their sons as gifts during their marriage: the "Sunflowers" bronze sculpture and "Amanda's Hat" bronze sculpture; the "Red Dress" and "Dance the Dream" sculptures; a Ramon Kelley cigar box with a ballerina and a Ramon Kelley dog; four small "Dit Afchin" paintings; two paintings of flowers in a vase; two paintings of a face; a painting of multiple faces; a mallard duck painting; and a painting of a boat.

Louisiana Civil Code Article 1543 governs manual gifts and states that a "donation inter vivos of a corporeal movable may . . . be made by delivery of the thing to the donee without any other formality." "For purposes of donation *inter vivos*, delivery is defined as relinquishing control or dominion over property and placing it within the dominion of the donee, irrevocably." *Brown v. Brown*, 93-1105, 93-1107 (La.App. 3 Cir. 4/6/94), 635 So.2d 255, 259, *writ denied*, 94-1667 (La. 10/28/94), 644 So.2d 649.

The *donee* has the burden of proving the donation by clear and convincing evidence. *Farrar v. Whaley*, 16-790 (La.App. 3 Cir. 2/1/17), 211 So.3d 449, *writ denied*, 17-409 (La. 4/13/17), 218 So.3d 626.

> Proof by clear and convincing evidence "requires more than a 'preponderance of the evidence' but less than 'beyond a reasonable doubt.'" In other words, "[t]he existence of the disputed fact must be highly probable, that is, *much* more probable that is non-existence." "This standard is usually employed 'where there is thought to be special danger of deception, or 'where the court considers that the particular type of claim should be disfavored on policy grounds.'

*Id.* at 454 (citations omitted).

The donee must prove by clear and convincing evidence that the donor "had the intent to irrevocably divest himself of the thing and that real delivery was made. The alleged donor's outward acts, together with any admissible evidence of the relationship of the parties, are important to prove a manual donation." *Broussard v. Crochet, Broussard & Co.*, 477 So.2d 166, 174 (La.App. 3 Cir. 1985) (citations omitted).

In the instant matter, we find that the trial court erred by placing the burden on Dr. Adams, the alleged donor, to prove that he had not donated the items at issue to Ms. Adams. Ms. Adams admits that these items would otherwise be Dr. Adams' separate property had he not manually donated them to her or to their sons. "Applying the wrong burden of proof is not only an incorrect application of the

6

law, it is inherently prejudicial because it casts a more onerous standard than the law requires on the parties." *Leger v. Leger*, 03-419, p. 2 (La.App. 3 Cir. 7/2/03), 854 So.2d 955, 957. Therefore, we will conduct a *de novo* review with respect to these items and consider whether Ms. Adams' satisfied her burden by clear and convincing evidence.

We first consider the "Sunflowers" and "Amanda's Hat" sculptures, which are heavy bronze sculptures located in Ms. Adams' garden that Ms. Adams claims Dr. Adams donated to each of the parties' two sons sometime in 2015. She provided no evidence concerning the alleged donation except her indication that Dr. Adams donated other bronze sculptures to his daughters from another marriage. Dr. Adams however, denied donating these sculptures to their sons, who were only fourteen or fifteen at the time of the alleged donation. He further explained that his daughters were adults with children of their own when he donated the other sculptures to them.

Not only is Ms. Adams' testimony insufficient to establish by clear and convincing evidence that Dr. Adams donated these sculptures to their sons, Ms. Adams provides no explanation concerning her authority to present this defense on behalf of their sons, who were adults at the time of trial, in order to defeat Dr. Adams' claims seeking the return of these items that are in Ms. Adams' possession.

As to the remaining artwork at issue in the Brookshire house, Ms. Adams testified generally that Dr. Adams gave the artwork to her around August of 2012, just prior to, or around the time that Dr. Adams moved in with Ms. Adams at the Brookshire home and they had reconciled their marriage. She explained that these items were displayed as decoration at the Brookshire home, whereas other artwork was stored in an extra bedroom. She admitted that the items were not given to her

for her birthday or any other special occasion, and that the only evidence of the alleged donations was her word that Dr. Adams had given the items to her.

Dr. Adams testified that the items at issue were purchased by the former art gallery, and he denied that he donated the items as gifts to Ms. Adams. The following colloquy with Dr. Adams occurred at trial:

A     Correct. Everything had been moved to storage when she came to the [Youngsville] residence and requested that we reconcile, and we agreed to that. It was at that point that I began to move the items of artwork to her house because there was no artwork.

Q     So, is it fair to say that you simply helped decorate her house with your separate property?

A     Yes.

. . . .

Q     So, when - - did you ever get a time when this property was donated to her? Did you hear her testify to any time that it was donated?

A     No. This is the first time I've heard this.

Q     Do you know what date - - did you ever hear of a date or see anything that lead [sic] you to believe there was a specific date . . . where the stuff actually became hers in her mind?

A     Rosie preferred diamonds.

Q     What did you do about that? How'd you handle that?

A     Second-hand art from an art gallery would not be something Rosie would get excited about, so I focused on diamonds.

. . . .

Q     But you do not agree that these art pieces that you have - -

A     No.

Q     Or alleging you want back are gifts to her?

A     No. They came directly from the gallery. They were to be sold. It wasn't . . . like "Oh, look I couldn't sell it, so I'm going to gift it to you." No. That would be ludicrous."

8

Ms. Adams also suggests on appeal that Dr. Adams' failure to take the artwork at issue on May 29, 2015, when he retrieved other personal belongings, is evidence of his donative intent. Dr. Adams, however, testified at trial that he did not bring the items with him at that time because they did not fit inside his vehicle, and he also indicated that he was unable to return to the Brookshire home after June 2, 2015, due to a restraining order.

We find that Ms. Adams' self-serving, and otherwise unsubstantiated testimony that Dr. Adams gave the artwork at issue to her does not satisfy her burden of proving by clear and convincing evidence that Dr. Adams intended to irrevocably divest himself of the artwork. We further disagree that Dr. Adams' retrieval of some of his property on May 29, 2015, sufficiently establishes his donative intent with respect to the items he did not take with him. Therefore, we reverse the trial court's ruling denying Dr. Adams' petition with respect to the artwork at issue, which is currently located in Ms. Adams' home on Brookshire, and we grant Dr. Adams' petition in this respect.

**Revocation of Donations for Ingratitude**

Dr. Adams also seeks review of the trial court's denial of his petition seeking to revoke donations of furniture, diamond jewelry, and the purse purchased in Paris on the basis of Ms. Adams' ingratitude in accordance with La.Civ.Code art. 1557. We first note that the trial court did not err in placing the burden of proof on Dr. Adams. *See, In re Succession of Rachal*, 08-1379 (La.App. 3 Cir. 4/1/09), 7 So.3d 132.

Louisiana Civil Code Article 1557 provides that a revocation of a donation inter vivos "may take place . . . if [the donee] has been guilty towards [the donor] of cruel treatment, crimes, or grievous injuries."

9

Grievous injuries sufficient to revoke a donation have been defined as any act naturally offensive to the donor. The jurisprudence has held that cruel treatment or grievous injury sufficient to revoke a gratuitous donation may include adultery by a spouse, seizing property belonging to a parent, filing suit against a parent alleging criminal activity, and slandering the memory of the donor.

*Erikson v. Feller*, 889 So.2d 430, p. 4 (La.App. 3 Cir. 12/8/04), 889 So.2d 430, 433, *quoting Porter v. Porter*, 36,007, p. 7 (La.App. 2 Cir. 6/12/02), 821 So.2d 663, 667-68.

"The determination as to whether a donee has committed a 'grievous injury' upon a donor depends heavily upon the facts and circumstances specific to the case. 'The trial court heard the testimony in its entirety and has a first hand impression of the credibility of all the witnesses.'" *Erikson*, 889 So.2d at 434 (internal citations omitted).

On appeal, Dr. Adams argues that the following constitutes ingratitude on the part of Ms. Adams: (1) the May 18, 2015 incident wherein the police were called while Dr. Adams was trying to enter the Brookshire house after the locks were changed; (2) Ms. Adams' June 2, 2015 answer and reconventional demand alleging that Dr. Adams had violated a restraining order; and (3) infidelity and adultery on the part of Ms. Adams, as shown by the circumstantial evidence. However, conflicting evidence was presented at trial concerning these allegations, including evidence concerning whether or not Dr. Adams was arrested or handcuffed in connection with the May 18, 2015 incident, and evidence concerning whether or not Ms. Adams had an adulterous affair with a family friend during the marriage. After reviewing the record, we cannot say that the trial court erred in concluding that Dr. Adams failed to prove ingratitude as contemplated by La.Civ.Code art. 1556.

## DECREE

For the reasons stated above, we reverse the trial court's denial of Dr. Adams' petition seeking the return of the following property: the "Sunflowers" bronze sculpture and "Amanda's Hat" bronze sculpture; the "Red Dress" and "Dance the Dream" sculptures; the Ramon Kelley cigar box with a ballerina and a Ramon Kelley dog; four small Dit Afchin paintings; two paintings of flowers in a vase; two paintings of a face; the painting of multiple faces; the mallard duck painting; and the painting of a boat. We further grant Dr. Adams' petition seeking the return of those items. Otherwise, we affirm the ruling of the trial court. Costs of this appeal are divided between the parties.

**REVERSED IN PART, AND RENDERED. AFFIRMED IN PART.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.