# COURT OF APPEAL, THIRD CIRCUIT

## CA 24-112

**ETHEL FAULK AND GINGER WRIGHT**

**VERSUS**

**GERALDINE RICHOUX AND JOHN KEITH FAULK**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-20833
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ELIZABETH A. PICKETT**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Timothy O'Dowd**
**O'Dowd Law Firm, LLC**
**924 Hodges Street**
**Lake Charles, LA 70601**
**(337) 310-2304**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Ethel Faulk**

**Daniel A. Kramer**
**Lundy LLP**
**501 Broad Street**
**Lake Charles, LA 70601**
**(337) 439-0707**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Geraldine Richoux**

**PICKETT, Judge.**

The defendant appeals the trial court's judgment in favor of her mother, revoking the donation of community property made to her by her mother and her deceased father. The judgment is affirmed.

## FACTS

On October 8, 2004, John and Ethel Faulk donated a portion of the community property they acquired during their marriage to their daughter, Geraldine "Gerry" Richoux (hereinafter referenced sometimes as "the property"). The Faulks also purchased a wood frame house and paid to have it moved onto the lot at significant cost to them. Mr. Faulk passed away in 2018. He had a last will and testament in which he left "full ownership of all of my property, whether separate or community, movable or immovable" to Mrs. Faulk. On July 28, 2021, Mrs. Faulk filed a "Revocation of Inter Vivos Donation on the Grounds of Ingratitude," revoking her donation of the property to Mrs. Richoux. On July 11, 2022, she filed suit seeking to revoke that donation.[1]

This proceeding arises from an error in the description of the property. Unbeknownst to the parties, Mr. Faulk erred when determining the intended boundary between his and Mrs. Faulk's property and the property donated to Mrs. Richoux. A survey performed in June 2021 showed the property described in the Faulks' donation to Mrs. Richoux is thirty feet further north than intended by the parties. Upon learning of this error, Mrs. Richoux called her mother and reported the error revealed by the survey. She told Mrs. Faulk that based on the survey she owned a portion of Mrs. Faulk's property such that Mrs. Faulk's bedroom, bathroom, and utility room were actually situated on her property. According to

---

[1] In September 2020, Mrs. Faulk donated the property to her daughter Ginger Gail Wright. Nevertheless, the parties have treated the property as being owned by Mrs. Faulk throughout this litigation.

Mrs. Faulk, Mrs. Richoux laughed and taunted her with the fact that she owned a portion of Mrs. Faulk's home, and the home would have to be cut to correct the donation.

Mrs. Faulk moved to Lacombe to live with her daughter, Ginger Wright, after she had surgery. Mrs. Faulk testified that in the spring of 2022, Mrs. Richoux set out concrete cylinders and rebar stakes tied with Christmas lights and rope to establish the actual location of the property line. Mrs. Faulk interpreted Mrs. Richoux's actions as showing her she could do what she wanted with the property. She was heartbroken that one of her children was trying to take her home from her.

Mrs. Faulk's testimony is corroborated by photographs that show the lights and rope were about waist high above the ground and visible from the road in front of Mrs. Faulk's home. The lights were lit and strung all the way to the siding on Mrs. Faulk's home. One photograph shows a rebar driven into the ground adjacent to the slab of Mrs. Faulk's home and the frame of a window. Mrs. Faulk was disgraced by the Christmas lights and rope being strung across her property. She did not return to her home for three months because of Mrs. Richoux's actions. Mrs. Faulk presented the testimony of others describing Mrs. Richoux's actions toward her, including Ginger Wright, her sister, her nephew, and her grandson, Mrs. Richoux's son. In general, these witnesses verified Mrs. Faulk's testimony and testified Mrs. Richoux treated Mrs. Faulk with animosity and disrespect, not love.

In July 2021, Mrs. Richoux hired an attorney to address the issue with the property line. The attorney wrote a letter to Mrs. Faulk on March 17, 2022, denying Mrs. Richoux treated Mrs. Faulk improperly. The letter informed Mrs. Faulk that Mrs. Richoux intended to construct a fence on the property between her house and Mrs. Faulk's home, which would leave several feet between the fence

2

and Mrs. Faulk's home, and that Mrs. Faulk's home "encroaches on the property donated" to Mrs. Richoux. The letter further informed Mrs. Faulk "Mrs. Richoux will continue to possess the full extent of her property, notwithstanding" the presence of Mrs. Faulk's home. Additionally, the letter informed Mrs. Faulk that because of "the love she bears for her mother," Mrs. Richoux "does not intend to take any action against" Mrs. Faulk and would allow Mrs. Faulk to continue to possess the property, but "she in no way intends to cede ownership of her property by way of allowing the encroachment which is allowed by her permission." Despite these statements, Mrs. Richoux testified she did not intend to maintain ownership of that portion of the property which exceeded what her parents intended to donate to her and testified she intended to return ownership of that portion of the property back to Mrs. Faulk.

Prior to trial, Mrs. Richoux filed peremptory exceptions of no right and no cause of action and prescription. She argued Mrs. Faulk had no right of action and no cause of action to revoke Mr. Faulk's donation of his interest in the property to her and that even if Mrs. Faulk did have such right or cause of action her claim had prescribed before she filed suit. Mrs. Richoux further argued any claims Mrs. Faulk might assert with regarding she allegedly took toward Mrs. Faulk more than one year before she filed suit were prescribed. The trial court denied Mrs. Richoux's exceptions of no right and no cause of action but sustained the exception of prescription, limiting the evidence Mrs. Faulk could introduce at trial to actions that occurred one year or less before Mrs. Faulk filed suit, as requested by Mrs. Richoux.

The matter proceeded to trial on August 30, 2023. After considering the evidence presented, the trial court concluded Mrs. Faulk proved Mrs. Richoux treated her with such ingratitude that she is entitled to revoke the donation she and

3

her husband made in favor of Mrs. Richoux. Mrs. Richoux appealed that judgment and now assigns the following errors with the trial court's rulings on the exceptions and the judgment.

## ASSIGNMENTS OF ERROR

Mrs. Richoux asserts the trial court committed the following errors in ruling on her exceptions and Mrs. Faulk's claim against her:

1) The trial court legally erred when it overruled the peremptory exception of no cause of action and allowed Mrs. Faulk to proceed with her claim to revoke the donation inter vivos of her deceased husband Bud Faulk, where there were no allegations of acts of ingratitude concerning him, and he had passed away more than a year prior to the filing of the original petition.

2) The trial court legally erred when it overruled the peremptory exception of no right of action, allowing Mrs. Faulk to revoke the donation of [her] deceased husband, Mr. Faulk under La. Civil Code Article 2349.

3) The trial court legally erred when it decreed that the entire donation *inter vivos* (and not only a fifty percent undivided interest of it) was revoked, including the donation inter vivos of Bud Faulk who had passed away more than a year prior to the filing of the original petition.

4) The trial court was manifestly erroneous in holding that any of the evidence of acts occurring between July 11, 2021, and the date of trial showed that "Mrs. Faulk had proved grievous injuries sufficient to revoke the donation made to Mrs. Richoux by [Bud Faulk]", who had been deceased for three years, and where evidence was limited to that time frame.

## DISCUSSION

Central to Mrs. Richoux's first three assignments of error is the fact that the property at issue is community property. The alienation of an undivided interest in community property is governed by La.Civ.Code art. 2337. Article 2337 states, "A spouse may not alienate, encumber, or lease to a third person his undivided interest in the community or in particular things of the community prior to the termination

of the regime." The co-ownership of the community existing between spouses is a distinct species of ownership. La.Civ.Code art. 2337, comment (a). The importance of this limitation on the alienation of community property is set forth in Comment (b) to La.Civ.Code art. 2337, which provides that one spouse's inter vivos donation of an undivided interest in community property to anyone other than his spouse is an "absolute nullity." Comment (c) to La.Civ. Code art. 2337 clarifies the purpose of this restriction is not to prevent the transfer of full ownership in community property but to "prevent[] a third party from owning an undivided interest in the community or in particular things of the community." *See also*, La.Civ.Code art. 2347(A) and La.Civ.Code art. 2349 which reiterate the requirement that both spouses concur in the alienation, including donation, of community property.

*Exceptions*

Mrs. Richoux argues the trial court erred in overruling her exceptions of no cause of action and no right of action. She asserts no cause of action exists for a spouse to revoke the donation of community property by her deceased spouse and Mrs. Faulk failed to establish a right of action existed in her favor to revoke the donation because Mrs. Faulk did not present any evidence showing Mrs. Richoux acted with ingratitude toward Mr. Faulk. Lastly, Mrs. Richoux contends any claim to revoke Mr. Faulk's donation of his interest in the property prescribed in 2019, one year after his death, pursuant to La.Civ.Code art. 1558.

In *Watson Memorial Spiritual Temple of Christ v. Korban*, 24-55 (La. 6/28/24), 387 So.3d 499, 506 (unquoted citations omitted), the supreme court addressed the exception of no cause of action, stating:

> "A cause of action, when examined in the context of a peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant." *Law Indus., LLC v. Dep't of Educ.*, 23-794, p. 4 (La. 1/26/24), 378 So.3d 3, 7. "The function of the peremptory exception

of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading." *Id.* The court reviews the petition and accepts well-pleaded allegations of fact as true. *Id.* The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Id.*

A trial court's denial of an exception of no cause of action involves a question of law and is reviewed de novo. *Id.* Appellate courts review questions of law to determine whether the trial court's ruling was legally correct or incorrect. *Hidden Grove, LLC v. Brauns*, 21-548 (La.App. 3 Cir. 5/10/23), 371 So.3d 463, *writs denied,* 23-1002 (La. 10/31/23), 372 So.3d 816, and 23-810 (La. 10/31/23), __ So.3d __.

Pursuant to La.Code Civ.P. art. 681, "an action can be brought only by a person having a real and actual interest which he asserts." If a defendant believes that a plaintiff does not have a real and actual interest in the claim she asserts, she can raise an objection of no right of action by a peremptory exception. La.Code. Civ.P. art. 927. The exception of no right of action questions whether the plaintiff has any interest in judicially enforcing the right asserted. *Trahan v. McManus*, 94-167 (La.App. 3 Cir. 3/22/95), 653 So.2d 89, *writ denied*, 95-1018 (La. 6/2/95), 654 So.2d 1112. The question is "can the legal remedy afforded by law be invoked by this particular plaintiff?" *Id.* at 91. When considering whether a plaintiff has a legal right to assert the claim at issue, the court reviews the plaintiff's petition and any evidence she introduces to show she has the right she claims. *Dowd v. Helena Emergency Physicians, PPLC*, 23-527 (La.App. 3 Cir. 3/27/24), 387 So.3d 31, *writ denied sub nom. Dowd v. Helena Emergency Physicians, PLLC*, 24-536 (La. 9/17/24). When an exception of no right of action is solely a question of law, the denial of the exception of no right of action is reviewed de novo. *Washington Mut. Bank v. Monticello*, 07-1018 (La.App. 3 Cir. 2/6/08), 976 So.2d 251, *writ denied*,

6

08-530 (La. 4/25/08), 978 So.2d 369. However, when evidence is introduced to support or defeat an exception of no right of action the manifest error-clearly wrong standard of review applies. *McKay v. Fontenot*, 22-690 (La.App. 3 Cir. 6/28/23), 368 So.3d 282, *writ denied,* 23-1040 (La. 11/8/23), 373 So.3d 62.

A suit to revoke a donation for ingratitude must be filed within one year of the day the donor "knew or should have known of the act of ingratitude." La.Civ.Code art. 1558. A deceased donor's successors must also file suit within one year of the act of ingratitude, not the donor's death. *Id.*

Pursuant to La.Civ.Code art. 1468,[2] inter vivos donations are irrevocable. Nonetheless, La.Civ.Code art. 1556 provides exceptions to the irrevocability of inter vivos donations, one of which allows a donor to revoke a donation inter vivos if the donee exhibits ingratitude toward the donor. Revocation for ingratitude is limited to situations where the donee attempted to take the life of the donor or is guilty of "cruel treatment, crimes, or grievous injuries" towards the donor. La.Civ.Code 1557. "'[G]rievous injuries' sufficient to revoke a donation has been defined as any act 'naturally offensive' to the donor." La.Civ.Code 1557, Comment (b). *See also Adams v. Adams*, 17-1030 (La.App. 3 Cir. 5/16/18) (unpublished opinion); *Erikson v. Feller*, 04-1033 (La.App. 3 Cir. 12/8/04), 889 So.2d 430.

Mrs. Richoux argues La.Civ.Code art. 1557 must be strictly construed because it provides an exception to the general rule stated in La.Civ.Code art. 1556. She is correct that the general rule of statutory construction is that a specific statute controls over a broader, more general statute. *Arabie v. CITGO Petroleum Corp.*, 10-2605 (La. 3/13/12), 89 So.3d 308. Additionally, "interpretation of any

---

[2] Louisiana Civil Code Article 1468 states: "A donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it."

statutory provision begins with the language of the statute itself. *In re Succession of Faget,* 10–188, p. 8 (La.11/30/10), 53 So.3d 414, 420[,]" and although "Official Revision Comments are not the law, they may be helpful in determining legislative intent." *Arabie*, 89 So.3d at 312.

Here, four Civil Code articles address the same topic: donation. Only one of the four articles addresses the donation of community property which is governed by specific rules. Louisiana Civil Code article 2337 governs inter vivos donations of community property, while La.Civ.Code arts. 1468, 1556, and 1557 apply to inter vivos donations in general. Accordingly, La.Civ.Code art. 2337 applies to Mrs. Faulk's claim to revoke her donation of the property to Mrs. Richoux. The revocation of her donation of her one-half undivided interest in the property renders the donation an absolute nullity because it would result in a third person owning a one-half interest in community property. To hold a spouse does not have a cause of action or a right of action to revoke a donation of community property in its entirety after her spouse dies ignores and violates the purpose and intent of La.Civ.Code arts. 2337, 2347, and 2349. Accordingly, the trial court did not err in denying Mrs. Richoux's exceptions of no cause of action and no right of action.

### *Revocation*

In her last assignment of error, Mrs. Richoux asserts the trial court manifestly erred in concluding Mrs. Faulk satisfied her burden of proving Mrs. Richoux treated her with ingratitude sufficient to warrant revocation of her donation of the property to Mrs. Richoux.

"'[W]hether a donee has committed a 'grievous injury' upon a donor depends heavily upon the facts and circumstances specific to the case. 'The trial court heard the testimony in its entirety and has a first-hand impression of the credibility of all the witnesses.'" *Erikson*, 889 So.2d at 434 (internal citations

omitted). Appellate courts review a trial court's findings of fact to determine whether those findings constitute "manifest error" or if they are "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). If the trial court's findings of fact are not manifestly erroneous or clearly wrong, we cannot reverse them. *Id.* On review, if there is a "conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* Trial court findings based on credibility determinations must be given "great deference" because "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* Having reviewed the record and the trial court's findings of fact, we find no basis for questioning the trial court's decision to credit Mrs. Faulk's testimony over Mrs. Richoux's testimony.

The trial court found Mrs. Faulk to be a credible witness, describing her as "sincere and genuine." To the contrary, the trial court outlined numerous instances in which Mrs. Richoux's testimony was contradicted by other evidence including her own actions and testimony.

Louisiana Civil Code Article 1557 provides an exception to the general rule stated in La.Civ.Code art. 1556 that inter vivos donations are irrevocable. Therefore, Mrs. Faulk's evidence must clearly establish her claim for revocation within the exception. *Am. Waste & Pollution Control Co. v. Madison Par. Police Jury*, 488 So. 2d 940, 944 (La. 1986).

A survey of cases in which donations have been revoked for ingratitude provides examples of actions found to warrant revocation. In *Erikson*, 889 So.2d 430, this court upheld the trial court's finding that a grandson's attempt to evict his grandfather from the property donated to him by his grandfather and insinuating

the grandfather molested the grandson's child constituted cruel treatment and grievous injury sufficient to revoke the grandfather's donation of property to the grandson. Earlier, in *Perry v. Perry,* 507 So.2d 881 (La.App. 4 Cir. 1987), *writ denied,* 512 So.2d 465 (La.1987), the trial court's revocation of a donation by a father to his son after the son obtained a judgment against his father then seized his parents' personal movable property to satisfy the judgment was affirmed on appeal. Courts have also affirmed the revocation of donations on the basis of ingratitude for committing adultery on their spouses. *See Cook v. Cook*, 21-1558 (La.App. 1 Cir. 7/7/22), 344 So.3d 670; *Whitman v. Whitman,* 31,814 (La.App. 2 Cir. 3/31/99) 730 So.2d 1048.

The trial court wrote thorough Reasons for Ruling detailing the acts by Mrs. Richoux which establish the validity of Mrs. Faulk's claim for revocation of the donation of the property. The trial court noted that although the parties acknowledged the error in the property description was unintentional, "Mrs. Richoux took full advantage of the error and claimed the property to be hers and not her mother's." Mrs. Richoux also taunted her mother about owning her bathroom and porch and laughed about dividing her home. Mrs. Faulk denied Mrs. Richoux's claims that she would return the disputed property to her. She understandably found it "heartbreaking" that a child to whom she had given land and a home was "trying to take part of [her own] home." Moreover, Mrs. Richoux's attorney's letter to Mrs. Faulk accused Mrs. Faulk of being untruthful in her Revocation of Inter Vivos Donation and negates Mrs. Richoux's claims that she was willing to return the property to her mother. Instead, it shows how cold and uncaring Mrs. Richoux was of her mother under the circumstances: planning to construct a fence to clearly delineate that Mrs. Richoux did not own the entirety of the property on which her home was constructed and pointing out she did not

10

intend to cede ownership of the property in question to Mrs. Faulk as well as describing Mrs. Faulk's remaining on the property as an encroachment on Mrs. Richoux's property. The trial court described Mrs. Richoux's treatment of Mrs. Faulk as "unjustified harassment and cruel treatment," which caused Mrs. Faulk much distress and uncertainty.

Mrs. Richoux was gifted not only a piece of property but a home at no expense to her. She lived in her home on her property for approximately seventeen years before the error in the property description came to light. Instead of continuing to live as she had lived for seventeen years, Mrs. Richoux saw fit to taunt her elderly mother with the fact that a portion of her mother's home was actually on her property. Any parent whose child treated them as Mrs. Richoux treated Mrs. Faulk would find her treatment to be ungrateful and naturally offensive. Having reviewed the record, we find the trial court's assessment of the facts and the credibility of the witnesses to be correct and affirm the judgment in favor of Mrs. Faulk.

## DISPOSITION

The judgment in favor of Ethel Faulk is affirmed. All costs are assessed to Geraldine Marie Richoux.

**AFFIRMED.**